In re The HAWAII TIMES
LIMITED, Debtor.

Bankruptcy No. 85–00206.

United States Bankruptcy Court,
D. Hawaii.

Aug. 13, 1985.

Warren H. Higa, pro se.

Dennis J. Davis, Honolulu, Hawaii, for defendant.

## MEMORANDUM DECISION RE: VALIDITY OF MAY 4, 1985 BOARD ACTION

JON J. CHINEN, Bankruptcy Judge.

In response to an Application of Debtor in Possession to Sell Property, Warren Higa, (hereafter "Higa") acting *pro se* as a shareholder of the debtor corporation, filed a Memorandum Re: Invalidity of May 4, 1985 Board Action, challenging the validity of the election of the members of the Board of Directors and the resultant authority of this Board to file the instant Chapter 11 case. Subsequent memoranda were filed both by Higa and the Debtor, a hearing was held on July 19, 1985, with argument and testimony presented regarding the validity of the May 4, 1985 board action, and supplemental memoranda on this issue were submitted both by the Debtor, through its counsel Dennis J. Davis, Esq., and by Higa.

## PROCEDURAL SUFFICIENCY

A challenge to the validity of a bankruptcy petition is normally brought before the court in the form of a Motion to Dismiss or to Vacate Order for Relief. Pursuant to Rule 1018 of the Rules of Bankruptcy Procedure, the procedural protections afforded by Part VII of the Rules of Bankruptcy Procedure are afforded the debtor in responding to such a challenge to the petition. The court notes that, although the instant issue has been raised as a response to Debtor's application to sell property, it has been adequately briefed and argued, with full notice to the debtor, and other parties.

The next inquiry involves standing to challenge proper authorization for filing a petition in bankruptcy. Courts have questioned the standing of a creditor who would benefit from dismissal to challenge the validity of the petition. The instant action, having been brought by Higa as a shareholder, does not suffer from this defect in standing. See 2 Collier's Bankruptcy Manual ¶ 301.20[2], at 301.41 (15th Ed. 19—).

This challenge to the validity of the May 4, 1985 actions of the directors of debtor corporation is thus procedurally sufficient to be, and herein will be, treated by this court as a Motion to Dismiss or to Vacate Order for Relief.

The issue here before the court presents an interface of corporate law as codified in the state statutes and developed in the common law with federal bankruptcy law. We begin with the axiom that a Chapter 11 petition may properly be filed only by those with authority to do so. *In re Wallace A. Erickson & Co.*, 44 B.R. 163 (Bankr.Ill.1984). In determining who is properly authorized to file a bankruptcy petition, this court must look to state statute, as well as the Articles of Incorporation and the By-laws of the corporation. *In re Farner, Boring & Tunneling, Inc.*, 26 B.R. 29 (Bankr.Tenn.1982); *In re Autumn Press, Inc.*, 20 B.R. 60 (Bankr.Mass.1982); *In re Al-Wyn Food Distributors, Inc.*, 8 B.R. 42, 43 (Bankr.M.D.Fla.1980).

## FACTUAL BACKGROUND

The Hawaii Times, Limited, (hereafter Debtor) was incorporated in Hawaii in 1907, at which time Articles of Incorporation were adopted. In addition to its newspaper and printing functions, Debtor owns the controlling shares in Columbia Broadcasting Company (hereafter CBC) which airs as the Japanese-language radio station KOHO. During recent years Debtor consistently operated at a loss, except for 1981 when a real estate parcel was sold, and suffered from legal battles among the directors and shareholders. Higa and another party submitted competing bids to purchase the shares of CBC from Debtor, and after lengthy negotiations Debtor accepted the offer of Higa's competitor. Subsequently, on March 14, 1985, Higa pur-

chased 1836 shares of stock in Debtor from Roy Soga and 527 shares of stock controlled by Takuzo Kawamoto. Coincident with this latter purchase, Higa obtained a letter of resignation signed by Kawamoto, dated March 21, 1985. The purchase of stock from Kawamoto gave Higa the controlling interest in Debtor, which purchase pursuant to 47 U.S.C. § 310 requires approval of the Federal Communications Commission (hereafter "FCC") because of Debtor's ownership of KOHO. Upon learning of this problem, Higa and Kawamoto discussed cancelling the sale, but testimony by Kawamoto at the hearing on July 19, 1985 established that cancellation of the sale was contingent upon Higa's obtaining a cancellation of the purchase from Roy Soga. The Soga sale was never cancelled. The stock was not returned to Kawamoto and Kawamoto has not returned the deposit to Higa, although he has tendered the funds.

During this period, the resignation signed by Kawamoto was presented, apparently by Higa, to the remaining directors. Evidence submitted by the parties established that the directors were aware of the resignation.

On May 4, 1985, Kawamoto and the two remaining directors, two other directors having resigned, met and convened a meeting at which they adopted By-laws, elected new officers for the Debtor, continued the meeting to May 7, 1985, and elected two replacement directors to fill the vacant directorships until the next annual meeting. On May 7, 1985, this newly constituted board authorized filing of the Chapter 11 petition.

## DISCUSSION

■ Pursuant to Hawaii Rev.Stat. § 426-4, (hereafter "H.R.S."), "(i)f the corporation has three or more stockholders or any number of members, the corporation shall have three or more directors." The Articles of Incorporation, Article VI, provide that "(t)he corporate power of said Company shall be vested in a Board of not less than Five, nor more than Fifteen Directors, all of whom shall be the stockhold-

ers in said Company." At the October 1981 stockholders meeting, the Board set the number of Directors at five. Absent a provision in the statute, articles or by-laws to the contrary, a quorum consists of a majority of the number of directors set by the stockholders. 19 Am.Jur.2d *Corporations*, § 1126. Thus, since neither H.R.S. nor the Articles provide for a specific quorum, and since no by-laws existed prior to the May 4, 1985 meeting, the required quorum for transaction of corporate business at that meeting was three directors.

Were there three directors in "good standing" at the May 4, 1985 meeting? It is undisputed that Ryuso Hirai, Miya Soga, and Takuzo Kawamoto attended the May 4, 1985 meeting and undertook to transact business of the corporation by passing By-laws, electing officers and directors. The status of Ryuso Hirai and Miya Soga as stockholders and directors is unchallenged. The issue is whether Kawamoto, who had sold his stock and signed a resignation in March of 1985, was a director in May of 1985.

## WHEN IS A RESIGNATION EFFECTIVE?

■ Absent provisions in the statute, the articles or by-laws to the contrary, the resignation of a corporate director is effective at common law whether made orally or in writing, is effective immediately unless made conditional, and is effective without acceptance by the corporation. *Smith v. Great Basin Grain Co.*, 98 Idaho 266, 561 P.2d 1299, 1310 (Idaho 1977), citing *Briggs v. Spaulding*, 141 U.S. 132, 154, 11 S.Ct. 924, 931, 35 L.Ed. 662 (1891). The office of a director becomes vacant and the resignation complete when it is tendered, without more required of the director or action by the corporation. This is based on the reasoning that the inaction or refusal of a board of directors to act should not impose upon a resigning director a future liability he does not wish to undertake. 2 Fletcher Cyc. Corp. § 349 (Perm.Ed.1982) (hereafter "Fletcher").

When the ownership of stock is a prerequisite to holding the position of director, as is required by Article VI of Debtor's Articles of Incorporation, disposal of the director's entire interest in the corporation's stock operates to disqualify him from holding the office of director and to divest him of the title of the office. Fletcher § 341.

By virtue of the sale of his stock to Higa on March 14, 1985 and his written resignation, signed on March 21, 1985, of which the other directors were aware, Kawamoto had ceased to become a director of Debtor corporation.

HAD KAWAMOTO RESCINDED THE SALE OF STOCK OR REVOKED HIS RESIGNATION?

Debtor argues that Kawamoto had rescinded the sale of his stock to Higa. Testimony at the July 19, 1985 hearing established that although Higa and Kawamoto discussed rescinding the sale of the stock, that rescission was contingent upon cancellation of Higa's purchase of stock from Roy Soga. The purchase from Roy Soga has not been cancelled, and thus the sale of stock from Kawamoto to Higa has not been rescinded.

Debtor also argues that Kawamoto, based on his belief that the sale of stock was illegal since not in compliance with FCC requirements, revoked his resignation before its acceptance and continued to serve as a director. In support of this contention that Kawamoto's participation at director's meetings in April and May is sufficient evidence of his intention to revoke his resignation, Debtor cites *In re Fidelity Assurance Ass'n*, 42 F.Supp. 973 (1941), rev'd on other grounds, 129 F.2d 442, 4th Cir.1942, aff'd 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032 (1943). In light of the lack of any requirement in the Hawaii statute or the Articles of the debtor corporation that a resignation must be accepted to be effective, this court finds that the better view is that a voluntary act on the part of a director subsequent to his resignation will not restore him in office without his election thereto. Fletcher § 349; 19 Am.Jur.2d § 1116; *Harry Levi & Co., Inc. v. Feldman*, 61 N.Y.S.2d 639 (1946).

Based on the foregoing, this court finds that Kawamoto had sold his stock and resigned his position as director of Debtor-corporation before the May 4, 1985 meeting; that the sale of stock had not been rescinded and the resignation had not been revoked prior to the May 4, 1985 meeting; and that since there was not a quorum of directors present for the May 4, 1985 meeting, the actions taken at that meeting, including the passing of By-laws, which provided for the election of directors and officers, and the election of officers and directors were unauthorized. The May 7, 1985 decision to file the instant Chapter 11 petition by the improperly elected board of directors was thus unauthorized.

In the Reply to Second Memorandum Regarding Invalidity of May 4, 1985 Board Action, filed by Debtor on July 23, 1985, Debtor asserts that the issue of the validity of the May 4 action is moot, since at a meeting of the duly elected Board of Directors of the Debtor held on July 22, 1985, the board ratified the actions of the May 4 and May 7, 1985 meetings. Ratification of the actions leading to the filing of this bankruptcy petition, if effective, would preclude dismissal of the case based on the ruling herein. Since it appears in the minutes to the July 19, 1985 meeting that Higa voiced objections to the meeting, the prudent course is to request the parties to submit memoranda on the issue of ratification of the prior actions leading to the filing of the Chapter 11 petition.

The parties are thus ORDERED to submit, within ten days of the entry of this Memorandum Decision, memoranda on the issue of ratification. If no memoranda are submitted, an order dismissing the instant petition and vacating the order for relief will be entered upon presentment.