In the Matter of ATLAS SUPPLY CORPORATION, Debtor.

Gail Lee PETERSON,
Plaintiff–Appellant,

v.

ATLAS SUPPLY CORPORATION,
Defendant–Appellee.

No. 87–2584
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 21, 1988.

Edmund L. Cogburn, Dow, Cogburn & Friedman, Houston, Tex., for plaintiff-appellant.

Wendell S. Loomis, Loomis & McKenney, Houston, Tex., for Atlas Supply Corp.

Barbara M. Rogers, Houston, Tex., for W. Steve Smith, Trustee.

Before CLARK, Chief Judge, JOHNSON and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Gail Lee Peterson and Lana McLain, independent administratrices of the estate of their father, Garland C. Moss, moved to dismiss the bankruptcy petition of Atlas Supply Corporation ("Atlas"), of which Moss was a director and fifty-percent shareholder, on the grounds that the petition was not validly authorized by the corporation since Moss was in a coma when it was filed. The bankruptcy judge denied the motion, and the district court dismissed their appeal. We affirm.

I

Atlas is a Texas corporation organized in 1977. Its charter named Garland Moss, Gary Cavasas, and Norman Kent Garrison as its three directors. At subsequent shareholder meetings, Moss and Cavasas, who each owned half of the corporation's stock, elected only themselves as directors and officers of Atlas. A board of directors resolution, however, required the signatures of three corporate officers to authorize the procurement of loans on behalf of the corporation. The signatures of two officers and the board of directors were needed to make deposits or withdrawals of over $2,500 from the corporate bank account.

On October 9, 1982, Moss suffered a stroke and lapsed into a coma. On October 28, Gail Lee Peterson, Moss's daughter, was appointed Moss's temporary guardian. On November 4, Cavasas, as the sole remaining active director and officer, appointed Mark Garfield and Carolyn Ann Cavasas as directors of Atlas. The three active directors then adopted a resolution requiring the signatures of only two directors on checks in excess of $2,500, and on loans from the bank to the corporation.

At a special meeting on December 7, 1982, Cavasas told the newly appointed directors that the bank was foreclosing on a loan. Cavasas reported that he had collected sufficient funds to pay off the bank, but that the repayment along with the bankruptcies of three of the corporation's largest customers had left Atlas insolvent. At Cavasas's recommendation, the three directors resolved to file a petition in bankruptcy under Chapter 7. Cavasas filed the petition on December 8.

In January 1983, Peterson filed an application in the state court to put the corporation into receivership. Peterson claims that she first learned of the bankruptcy at the state court hearing on her application. Upon learning of the bankruptcy, Peterson negotiated with the trustee to purchase the life insurance policy on her father's life, which the trustee claims to be an asset of Atlas's estate. The trustee gave notice to the creditors of the proposed sale of the policy for its cash value, and one creditor, J & J Machine Shops, Inc., objected. Peterson then bought J & J's claim. On March 18, 1983, Moss died without having regained consciousness. The value of the policy increased to $100,000. As a result, the trustee refused to consummate the sale to Peterson. Peterson, however, still maintains a claim on the policy in the bankruptcy proceeding.

In March 1983 Peterson was appointed by the state court as temporary administratrix of her father's estate with limited powers. On March 5, 1984, Peterson filed her first motion to dismiss the bankruptcy peti-

tion. On November 27, 1984, Peterson and her sister Lana McLain were named independent administratrices of Moss's estate.

Peterson's Motion to Dismiss asserted that the filing of Atlas's bankruptcy petition was not authorized by the corporation since Moss was comatose and Cavasas had improperly appointed two new directors. In June 1984, the bankruptcy court denied this motion. Peterson filed a second motion in August 1984, and in August 1985, the bankruptcy judge set aside the order denying the first motion and held a hearing on the second motion. This motion, too, was denied.

The bankruptcy judge issued a memorandum opinion with his denial of Peterson's second motion. In that opinion, the judge cites no less than four separate bases for his denial of the motion to dismiss: (1) Cavasas's appointment of the two new directors was valid since two vacancies existed, and so the bankruptcy petition was authorized; (2) even if the bankruptcy had not been authorized, under Fifth Circuit precedent the petition should not be dismissed because Peterson waited too long to complain; (3) Peterson was also barred by the doctrine of laches from pursuing her objection to the petition; and (4) even aside from laches, the motion to dismiss should be denied because it would prejudice the creditors.

Peterson and McLain appealed to the district court, which affirmed the bankruptcy judge's denial of the second motion to dismiss. Peterson and McLain now appeal from the district court's judgment.

## II

■ Peterson moved to dismiss the bankruptcy petition under section 707(a) of the Bankruptcy Code. Under that section a bankruptcy judge may dismiss cases "only for cause." 11 U.S.C. § 707(a). Section 707(a) does not, however, provide an exhaustive list of factors to be considered in determining whether good cause exists to dismiss a bankruptcy petition. *In re Carroll*, 24 B.R. 83 (Bankr.N.D. Ohio 1982). Under past bankruptcy law, whether to grant a motion to dismiss has been

guided by equitable principles: "The court must balance the equities and weigh the 'benefits and prejudices' of a dismissal." *In re Blue*, 4 B.R. 580 (Bankr.D.Md.1980) (citations omitted). Section 707 itself does not preclude the application of equitable principles. *In re Blackmon*, 3 B.R. 167 (Bankr.S.D. Ohio 1980). Since equitable principles may be applied under the present Bankruptcy Code, the decision whether to grant a motion to dismiss a petition in bankruptcy lies within the discretion of the bankruptcy judge. *Cf. In re International Airport Inn Partnership*, 517 F.2d 510, 511 (9th Cir.1975) ("the granting of a voluntary motion to dismiss (under the Bankruptcy Act) lies within the sound discretion of the Referee and is reversible only for an abuse of that discretion").

The bankruptcy judge did not abuse his discretion in denying Peterson's motion to dismiss. Sufficient considerations were present to support the judge's decision.

■ First, neither Atlas nor its creditors stands to benefit by dismissal. Nobody questions the fact that Atlas did not have the ability to pay its creditors. The appellants do not claim that the corporation could have been saved or that they are presently able to pay off the creditors outside a bankruptcy proceeding. Peterson's only apparent interest is the life insurance policy. She does not assert, however, that her interest in the life insurance policy constitutes grounds for dismissal. In fact, if Peterson does have a legitimate claim on the policy, that claim can be pursued as well in the bankruptcy proceeding as in any other court.

On the other side of the balance is the prejudice to the creditors. If dismissal would prejudice the creditors, then it will ordinarily be denied. *Matter of Williams*, 15 B.R. 655 (E.D.Mo.1981). Delay in satisfying creditors' claims can be sufficient to preclude dismissal. *Id.* For example, the creditors may be prejudiced when a motion to dismiss is filed long after bankruptcy is initiated, since the creditors have already been stayed from debt collection for that period of time and dismissal would

erase the benefit of that delay and force them to reinitiate procedures for debt collection from the start. *See, e.g., In re Klein,* 39 B.R. 530 (Bankr.E.D.N.Y.1984). Such is the case here. The bankruptcy judge found that the creditors would be prejudiced if the case were dismissed since the automatic stay had been in effect for more than three years and since there was no guarantee that Atlas's assets would be preserved if the trustee lost control. These findings are not clearly erroneous. The appellants, however, argue that prejudice can be considered only if it leaves creditors less likely to collect their debts than if no bankruptcy had ever been filed. This argument is contrary to the cases cited above. Since the appellants have not cited any authority for their position, we are disinclined to accept it. Rather, we hold that the bankruptcy judge did not abuse his discretion when he considered the prejudice to the creditors.

■ Finally, we reject the appellants' main argument that the bankruptcy judge should have dismissed the petition because it was never properly authorized by the corporation. The bankruptcy judge found that Peterson was barred from objecting on those grounds because she waited too long to object. Peterson knew of the bankruptcy petition in January 1983. She did not file her first motion to dismiss until March 1984. In the meantime, the creditors were held off while the bankruptcy trustee incurred significant expenses liquidating the estate. Also during that period, Peterson seems to have been concerned primarily with personal ownership of the life insurance policy, first by attempting to purchase it, and then by asserting a claim over it. We agree with the bankruptcy judge that Peterson's excuse of avoiding unnecessary litigation expenses is insufficient under the circumstances of this case. Accordingly, we hold that the bankruptcy judge did not err in concluding that by waiting over a year before objecting, Peterson forewent her right to complain that the bankruptcy petition was not authorized by the corporation.

In this respect, the bankruptcy judge's holding is in accordance with, if not required by, our precedent in *In re Farmers' Supply Co.,* 275 F. 824 (5th Cir.1921). In *Farmers',* a shareholder waited for four months before objecting that a bankruptcy petition was unauthorized. The court dismissed his objection:

> We are of the opinion that, if Alexander had the right to defeat the voluntary petition in bankruptcy filed in the name of Farmers' Supply Company, because there was no proper corporate action authorizing the institution of the proceeding, he lost that right by his silence and inaction under the circumstances and for the length of time above indicated. His conduct, with full knowledge of what was going on, was such as to support an inference that he acquiesced in the bankruptcy adjudication, and in the administration and disposition under the orders of the court of the property of the corporation, which came into the court's possession as a result of the adjudication.

*Id.* at 826.

Peterson and McLain claim that *Farmers'* is inapplicable since in that case the complaining shareholder held only seven of sixty-four shares, whereas Moss owned half of the shares of Atlas. Although they are correct that the facts of *Farmers'* differ in this respect, nevertheless the principle of *Farmers'* does apply. The court in *Farmers'* did not rely on the futility of an objection by so small a shareholder, but rather on the failure of the shareholder to make his objection in a timely fashion, given that he knew of the bankruptcy case. *Id.* at 824. Here, although Peterson knew of the bankruptcy proceeding for over a year, she did not voice her objection to it; indeed, she actually took actions consistent with the proceeding, such as attempting to purchase the life insurance policy and later asserting a claim over the policy. Thus, in this case, as in *Farmers',* lack of corporate authorization is not an available objection to the bankruptcy petition.

### III

We hold that the bankruptcy judge did not abuse his discretion in declining to dis-

miss the bankruptcy petition. The judgment of the district court affirming the denial of the motion to dismiss is, therefore,

AFFIRMED.