**In re I.D. CRAIG SERVICE CORP., Debtor.**

Bankruptcy No. 89–00640.
Motion No. 90–3507–M.

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 31, 1990.

Robert Paul Vincler, Pittsburgh, Pa., for debtor.

Joseph Friedman, Gerri L. Sperling, Pittsburgh, Pa., for Blue Cross or Western Pennsylvania and Pennsylvania Blue Shield.

Joseph J. Bernstein, Trustee Owen W. Katz, Pittsburgh, Pa., for trustee.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the Court is a Motion to Dismiss a voluntary petition under Chapter 11 which was filed by Harry Jones, the President, majority shareholder and member of the Board of Directors of the I.D. Craig Service Corporation, a corporation organized under the laws of the Common-

wealth of Pennsylvania. The motion to dismiss was filed by the Board of Directors of the I.D. Craig Service Corporation, alleging that Harry Jones acted without the Board's authority when he signed and filed the bankruptcy petition for the Debtor. The Trustee filed objections in which creditors Blue Cross of Western Pennsylvania and Pennsylvania Blue Shield (BC/BS) joined.

*In re Farrell Realty Co.*, 10 F.2d 612, 614 (W.D.Pa.1925), states the rule concerning the ability of a corporate president to place a corporation into bankruptcy without the authority of its board of directors:

> A president of a corporation, it is true, of his own motion cannot lawfully place the company in bankruptcy by means of a voluntary petition, and if he were to undertake to do so, and the adjudication were improvidently made, a bankruptcy court undoubtedly would have the power, upon seasonable petition, to vacate the adjudication.

The Board asserts that the filing of this motion to dismiss constitutes its "seasonable" petition to have Jones' unauthorized act vacated.

The following facts have been stipulated by all parties. Harry Jones, President of the debtor corporation, filed a voluntary Chapter 11 bankruptcy petition on behalf of the Corporation on March 13, 1989. Jones filed this petition without the consent or knowledge of the other Board Members, and in so doing, acted outside his authority.[1] Within several days after Jones filed the petition all members of the Board became aware of Jones' action due to media coverage as well as through conversations with Jones. Once the petition was filed, a trustee was appointed who employed two Board Members, Mary Conley and Shirley

---

1. Although the parties stipulated to this fact, the Court is aware from the bankruptcy petition and litigation involving Harry Jones that he was and remains a 70% shareholder, the President, a member of the Board of Directors and fully in charge of the corporate affairs at all times relevant to these proceedings and pre-petition. Jones accomplished the bankruptcy filing as President of the Debtor. As majority shareholder, he must be deemed to have ratified his own act. To state now that the Board did not autho-

rize and/or ratify Jones' act is to ignore the obvious: by his sole vote Jones, the majority shareholder, could elect a new board which would ratify the filing which he performed as the responsible corporate officer. *Cf., In re Penny Saver, Inc.,* 15 B.R. 252, 254 (Bankr.E.D. Pa.1981) (filing of corporate bankruptcy by president who was wife of sole shareholder was not shown to have been done with lack of authority.)

Schnepp. Furthermore, Mary Conley was a defendant in a complaint for injunctive relief brought by the plaintiff/trustee and attended a hearing in that action. Caroline Hines, a Board Member, filed a Proof of Claim with the Court. Caroline Hines and Audrey Sebring, also a member of the Board, purchased assets of the Debtor from sales conducted by the Trustee pursuant to motions filed with and approved by the Court.[2]

Additionally, the Board of Directors met in the summer of 1989, several months after the bankruptcy was filed, and approved an attorney as counsel for the Debtor. Nonetheless, on March 26, 1990, the Board passed a resolution which (1) affirmed Jones' lack of authority to file the voluntary petition and (2) employed an attorney to seek dismissal of the bankruptcy case based on the alleged lack of authority.

Based upon the stipulated facts, the Trustee and BC/BS argue that the Board is estopped from obtaining the requested relief. First, it is asserted that the doctrine of laches applies. Jones, with apparent authority, filed for bankruptcy on behalf of the Debtor on March 13, 1989. The Board Members learned of the filing within several days, yet they did not advise the court of the instant situation until March 26, 1990, over one year later. Furthermore, the Board Members actively participated in numerous proceedings which followed the filing of the petition, including adoption of a resolution allowing the Debtor corporation to hire legal counsel who, after appointment, filed a disclosure statement and plan on Debtor's behalf.[3]

In *Matter of Atlas Supply Corp.*, 857 F.2d 1061 (5th Cir.1988), a case similar to that at bar, Moss, a fifty percent shareholder of Atlas, suffered a stroke and lapsed into a coma. Cavasas, the other fifty percent shareholder, appointed two persons as directors of Atlas on December 7, 1982, and called a directors' meeting during which he recommended that the corporation file for bankruptcy. The petition was filed on December 8, 1982. Shortly after, Moss died.

Moss' daughter, Peterson, was appointed temporary administratrix of her father's estate. On March 5, 1984, she filed a motion to dismiss the bankruptcy petition on the grounds, *inter alia*, that the petition was filed without proper authorization of one of the corporate shareholders. The Court held that Peterson was barred from asserting such a claim because she had waited over a year from the time she learned of the filing. In affirming that decision, the appellate Court stated:

> We hold that the Bankruptcy Judge did not err in concluding that by waiting over a year before objecting, Peterson forewent her right to complain that the bankruptcy petition was not authorized by the corporation.

*Matter of Atlas, supra* at 1064.

In the case at bar, the Board of Directors waited over a year before objecting to Jones' lack of authority. Like Peterson, the Board is time-barred.

Trustee and BC/BS also assert that although Jones may have acted outside the scope of his authority, subsequent ratification by its members bars the Board from succeeding on its motion to dismiss.

Ratification may be established by proof that benefits were derived from the act in question or through participation in the act itself. In *In re Martin–Trigona*, 760 F.2d 1334 (2d Cir.1985), a corporation's attorney, acting under an alleged power of attorney from the corporation's president, filed a bankruptcy petition for the corporation. At a later date, the president challenged the validity of the power of attorney and of the petition. The Court held that the corporate president had acquiesced in and ratified the corporate attorney's act by his significant participation in the proceedings. The Court stated:

> If a corporation acquires or is charged with knowledge of an unauthorized act

---

2. The sales were advertised and notices of the sales were sent to creditors in accord with the Local Rules and orders entered in this case.

3. The disclosure statement and plan were not confirmed. The case was converted to Chapter 7 before the pending motion was filed.

undertaken by someone on its behalf, and does not repudiate that act within a reasonable time, but instead acquiesces in it, the corporation is bound by the act. *In re Martin–Trigona, supra,* at 1341. In the instant case, the Board learned of the bankruptcy within days of the filing, hired counsel, and participated in hearings, claims and sales and formation of a plan of reorganization in bankruptcy court for over a year before it decided to repudiate the filing.

Another case, which is factually similar to the one at bar was decided on the basis of ratification. In *In re Valles Mechanical Industries, Inc.,* 20 B.R. 355 (Bankr.N.D. Ga.1982), a voluntary Chapter 7 petition was filed by the corporation's president without the express authority of the Board of Directors. The Board later filed a complaint seeking to dismiss the bankruptcy. The Court held that a Board of Directors may ratify the acts of a corporate officer after the fact.

In the pending case, the Board Members of the I.D. Craig Service Corporation ratified Jones' act by participating in the proceedings which followed the filing of the bankruptcy petition. In addition, two of the members were gainfully employed post-petition when they were hired on behalf of the estate by the Trustee and others benefitted from the bankruptcy proceedings as the successful purchasers of estate assets. Similar benefits formed part of the basis upon which the Court refused to dismiss a bankruptcy for lack of authority in *In re Farrell Realty Co., supra,* at 614.

■ Finally, in opposing the motion to dismiss BC/BS asserts justifiable reliance upon the facially valid petition. In addition, BC/BS has expended substantial sums to litigate their claims in this Court. Also, the Trustee has sold assets, including a condominium, office furniture and equipment, and vehicles, and distributed sizable funds from the estate [4]. The Debtor has had the benefit of the automatic stay which halted several prepetition state court actions commenced against it. To dismiss

the bankruptcy at this point, after the proceedings have gone on for over a year, with no timely objection from the Board or the shareholders, and over the objection of the Trustee and major creditors, would be unjustifiable and inequitable. *Cf. In re Farrell Realty, supra,* at 615 (dismissal which, *inter alia,* would materially injure creditors and purchasers of its realty denied).

■ Although, generally, a corporate president cannot bind the corporation in a bankruptcy proceeding without the authority of the Board of Directors, given the situation at bar it is clear that the Board of Directors has waived its right to challenge the filing through its ratification of Jones' act and by laches in failing to file a timely motion to dismiss.

An appropriate Order denying the motion will be entered.

---

**4.** As of July 6, 1990, the Trustee held approximately $1,059,000.00 and had distributed at

least $2,840,000.00 pursuant to orders authorizing the same.