### In re AMERICAN GLOBUS CORP., Debtor.

### Bankruptcy No. 95–B–42805 (TLB).

United States Bankruptcy Court, S.D. New York.

May 7, 1996.

Rosenberg, Musso & Weiner by Bruce Weiner, Brooklyn, New York, Paul H. Appel, Special Counsel, New York City, for Debtor.

LeBoeuf, Lamb, Greene & MacRae, L.L.P. by Scot C. Gleason, New York City, for John S. Pereira, Interim Trustee.

Lester & Fontanetta by Roy Lester, Garden City, New York, for Movant.

Mary Elizabeth Tom by Hillary F. Schultz, Acting United States Trustee, New York City.

## DECISION ON MOTION TO DISMISS PROCEEDINGS

TINA L. BROZMAN, Chief Judge.

The debtor, American Globus Corp., is a New York corporation which filed its chapter 11 petition on June 23, 1995.[1] The petition was signed by one Abram Gin, who represented that a resolution of the debtor's board of directors had been passed authorizing the filing of the petition. Movant Montgomery Associates, Inc. ("Montgomery") seeks dismissal of the debtor's chapter 11 petition on the theory that it was not filed with the requisite corporate authority. Because I believe the petition was in fact properly filed, Montgomery's motion is denied.

### Background

The parties have stipulated that there are no material facts in dispute and that all of the exhibits submitted may be admitted into evidence. The following recitation of facts is therefore culled from the parties' joint pretrial order, the transcript of the hearing on this motion at which certain additional stipulated facts were read into the record, and the parties' exhibits, including the deposition of Richard Mufoletto, who is the president of the movant, Montgomery.

The debtor was engaged in the export of consumer goods to Russia. Formally incorporated as Comstar Telecommunications, Inc. ("Comstar"), it was later renamed. Montgomery, controlled by Mufoletto, is a New York corporation which owns a 30% interest in the debtor. The remaining 70% of the debtor's stock is owned by Gin.

The debtor's corporate bylaws, dated November 30, 1994, provide that all corporate action must be approved by a unanimous vote of its shareholders. (Exh. 4)

In March 1995, the debtor's shareholders entered into written agreement (the March

---

1. The case was subsequently converted to one under chapter 7 on consent of all parties, with the specific reservation of the movant's right to challenge the validity of the filing.

1995 Agreement) (Exh. 10) which provided, among other things, that Gin would "manage[,] bind and otherwise conduct all business" of the debtor. In addition, it stated that Mufoletto would "have the right to handle day to day affairs" of the debtor, but would have "no authority to create, modify or terminate any [debtor] business relationships without prior written approval form [sic] [Gin]." It also provided that Mufoletto and Gin would have to "mutually agree on the hiring, firing and changes in compensation of all non-officer employees." Finally, it stated that Gin would have "to pre-approve all checks, wire transfers and other disbursements other than payroll and health benefits."

Thereafter, in spite of the March 1995 Agreement, Mufoletto, without Gin's consent, wrote numerous checks aggregating several hundred thousand dollars (Mufoletto Deposition of 10/18/95 at 71. Mufoletto Deposition of 10/23/95 at 95–108).

In a six-page letter to Gin dated May 8, 1995 Mufoletto complained bitterly about certain improprieties he alleged were committed by Gin. In that letter, he concluded,

Accordingly, on this day I have done the following:

Resigned as President and Director of American Globus Corp. effective immediately; . . . removed my name as signatory on all [bank] accounts; Terminated the [Debtor's] American Express card; Terminated the employees of [the Debtor] and paid the Company severance and vacation package; [and] [n]otified all vendors that the offices of the [Debtor] have moved to Vladistovok; . . . .

(Exhibit 8).

On June 21, 1995, a meeting was held between Gin and one Michael Betelman, without notice to Mufoletto. At that meeting, Gin purported to elect himself and Betelman directors of the debtor. They promptly resolved to file a chapter 11 petition on behalf of the debtor. (Transcript of hearing of 4/15/96 at 13–15).

Montgomery asks that I dismiss the petition for lack of jurisdiction, asserting that this relief is mandated because Gin violated the unanimous voting requirement set forth in the debtor's bylaws.

## Discussion

█ The authority to file a bankruptcy petition on behalf of a corporation must derive from state law. *Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255, 1258 (8th Cir.1994), *citing Price v. Gurney*, 324 U.S. 100, 106–07, 65 S.Ct. 513, 516–17, 89 L.Ed. 776 (1945). "[T]he Bankruptcy Code does not establish what the internal requisites are for the initiation of a voluntary corporate bankruptcy proceeding. It is therefore appropriate to apply . . . [the law] of the state in which the Court sits regarding such requirements." *In re Autumn Press, Inc.*, 20 B.R. 60, 61 (Bankr.D.Mass.1982). I now turn to the applicable law.

█ Generally, under New York law, a bylaw serves as a binding contract between a corporation and its shareholders, and between shareholders *inter se.* See 13 N.Y.Jur. *Business Relationships* § 156 (1981) (citing cases). However, like a contract, "modification or abrogation of a bylaw may be accomplished by acts or conduct on the part of stockholders. Nonuser of a bylaw, continuing for a considerable length of time, and acquiescence therein, may work its abrogation." *Id.* at § 158 *citing Pomeroy v. Westaway*, 189 Misc. 307, 70 N.Y.S.2d 449 (Supreme Ct., N.Y.Cty.1947). In addition, the determination as to whether to honor corporate formalities is an equitable one, and courts should not sanction "a perversion of the privilege to do business in a corporate form." *See Data Probe, Inc. v. 575 Computer Services, Inc.*, 72 Misc.2d 602, 340 N.Y.S.2d 56, 61 (Civ.Ct., N.Y.Cty.1972) *quoting Berkey v. Third Ave. Ry. Co.*, 244 N.Y. 84, 95, 155 N.E. 58 (1926).

█ Here, it is clear that Montgomery wishes to advance the interests of its principal by invoking corporate arrangements that it previously showed little interest in respecting. Although the filing of a bankruptcy petition is certainly a measure serious enough to have demanded shareholder approval even were there no unanimity provision in the debtor's bylaws, *see* 15 N.Y.Jur. *Business Relationships* § 951 (1981), so too

was Mufoletto's decision to close down the debtor's entire operations, including the closing of its accounts and the firing of all its employees. There can be no better evidence of Montgomery's acquiesence in the abrogation of the unanimity provision of the bylaws than Mufoletto's considerable activity in contravention of the same. Mufoletto also acted in complete disregard of the March 1995 Agreement, in which he agreed to obtain written pre-approval before issuing any payments on behalf of the corporation. It is uncontested that Mufoletto made significant (and possibly preferential) transfers without obtaining any written approval. Mufoletto cannot ignore all corporate formalities and then successfully argue that the remaining shareholder's attempt to salvage the business through bankruptcy is untenable because he did not have the consent of the very shareholder who ignored corporate formalities when he terminated operations of the business.

In addition, the denial of Montgomery's motion is particularly compelling on these facts. The record is rife with transfers by Mufoletto, that, at least on their surface, seem fraudulent or preferential. (Of course, I make no findings as to the validity or invalidity of the transfers). Because by all accounts this debtor is no longer a going concern, it is quite apparent that Montgomery's motive in seeking dismissal is to squelch possible causes of action that the chapter 7 trustee may have against it or Mufoletto. Under these facts, "dismissal of a bankruptcy proceeding, for non-compliance with corporate bylaws or state law upon the motion of a stockholder who holds what otherwise might be a preferential transfer, would be unjustified in both law and equity." *Autumn Press*, 20 B.R. at 63 (dictum). *See also In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 765 (Bankr.S.D.N.Y.1992) ("The vast weight of the case law requires that economic realities must not be ignored merely to preserve the legal form of corporate entities, most particularly where such legal formalism will disadvantage the vast majority of creditors....").

In addition to its arguments under New York law, the debtor has invoked section 105 of the Bankruptcy Code as an independent statutory basis for the preservation of its case in this court. Because I find questionable the proposition that I could use section 105 to create jurisdiction where otherwise there would be none, and because there are adequate grounds to support a denial of Montgomery's motion under New York law, there is no need to address this contention. *See, e.g., In re Megan–Racine Associates, Inc.*, 192 B.R. 321, 327 (Bankr.N.D.N.Y.1995) (§ 105(a) must be employed " 'within the confines of the Bankruptcy Code.' ").

Accordingly, Montgomery's motion to dismiss the debtor's petition is denied. Counsel for the debtor is directed to SETTLE an ORDER consistent with this decision.