PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HARRY G. HAGER,
Plaintiff-Appellant,

v.

RUTH A. GIBSON, Trustee for
Preference, Ltd.,
Defendant-Appellee.

No. 95-2574

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Henry C. Morgan Jr., District Judge.
(CA-95-46, BK-93-40914)

Argued: September 25, 1996

Decided: February 28, 1997

Before LUTTIG and MICHAEL, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Phillips wrote the opinion, in which Judge Luttig and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Frank James Santoro, MARCUS, SANTORO &
KOZAK, P.C., Portsmouth, Virginia, for Appellant. Alvin Powers
Anderson, ANDERSON, FRANCK & DAVIS, P.C., Williamsburg,
Virginia, for Appellee. **ON BRIEF:** Karen M. Crowley, MARCUS,
SANTORO & KOZAK, P.C., Portsmouth, Virginia, for Appellant.
Ruth A. Gibson, Norge, Virginia, for Appellee.

**OPINION**

PHILLIPS, Senior Circuit Judge:

Harry Hager appeals from the denial of his motion to dismiss a bankruptcy proceeding for lack of subject matter jurisdiction. He contends that the filing in behalf of the corporate debtor was not properly authorized. We agree with the district court that the filing, though initially deficient, was authorized by later ratification which validated it for jurisdictional purposes. We therefore affirm.

I.

In 1987, Donald J. Roop and his wife, Sandra Roop, incorporated Preference, Ltd. (Preference) under Virginia law for the purpose of operating an Orvis retail establishment in Colonial Williamsburg; each owned fifty percent of the corporation's stock at incorporation. The Roops divorced after the incorporation, and Hager purchased Mrs. Roop's shares in the corporation for $150,000. At all relevant times since, Hager was a fifty percent shareholder in Preference and a director of the corporation; Roop, a fifty percent shareholder, president and a director; and Hager's son Christian, a director and secretary/treasurer of the corporation. When Hager purchased Mrs. Roop's stock, Crestar Bank (Crestar), which had extended a running line of credit to Preference, required Hager to personally guarantee the credit line, as had Roop.

Hager's personal relationship with Roop declined along with the financial fortunes of the corporation, and by late 1992 Roop and Hager communicated only through their attorneys, though Roop continued to operate the Orvis retail establishment. Learning of Preference's troubled financial status and the tension between Hager and Roop, Crestar demanded immediate payment of the balance due on the Preference note. According to Hager, Crestar pressured him personally by invoking the personal guarantee and demanding payment either from Preference's account or Hager's personal funds. Hager then purchased the note and Crestar assigned its rights under the note to Hager in his own name, on December 30, 1992. Hager then closed the Orvis establishment and retained the services of a liquidation firm to liquidate its inventory.

2

In March 1993 Roop set about filing for bankruptcy on behalf of Preference. He prepared a notice to be distributed to Hager as the only other shareholder. The notice, dated March 11, 1993, read in part: "You are hereby notified that a special meeting of all stockholders is called for . . . March 29, 1993 . . . . The purpose of this meeting is to consider a resolution authorizing and directing the officers and directors of the corporation to file on behalf of the corporation a Petition in Bankruptcy . . . ." JA at 25-26. Roop sent the notice through certified mail to Hager personally, and Hager refused the letter. Roop also forwarded the notice to Hager's attorney, Troy Titus. Titus responded to the notice by writing Roop's attorney,"I am in receipt of the letter dated March 15, 1993. I have reviewed the papers with my client. However, my client does not wish to sign them." JA at 34.

Roop hired one Stephen D. Harris to act as independent counsel for Preference at the special meeting. Harris and Roop met on March 29 at the designated location, but neither Hager nor Titus attended. Roop, as the only shareholder present, voted to place the company in bankruptcy. To memorialize his vote, Roop executed a resolution that stated, "[Harris] has advised [Preference] that Harry G. Hager is precluded from voting on this particular resolution because of his claim of the status of a secured creditor." JA at 44-45. Because he was the only shareholder present and able to vote on the matter, the resolution stated that Roop had the authority to place Preference in bankruptcy with his vote alone. There is no evidence that Hager or Titus ever received a copy of the resolution.

Roop filed a voluntary petition on behalf of Preference under Chapter Seven of the Bankruptcy Code on April 26, 1993. The Bankruptcy Court appointed Ruth Gibson to act as trustee (hereafter, the Trustee). On December 14, 1993, the Trustee demanded by letter that Hager turn over certain funds that she alleged properly belonged to the debtor. Hager acknowledged receipt of the letter but did not otherwise respond to the demand. The Trustee then responded to Hager's inaction by filing an adversary proceeding against Hager on August 18, 1994, expanding on the allegations made in the earlier letter but demanding the same relief.

On December 20, 1994, Hager filed a Motion to Determine Compliance with Local Rule 203 and to Dismiss the Case and all Related

Adversary Proceedings.**1** In his motion, Hager claimed that Roop improperly called the special meeting of shareholders and incorrectly assumed that Hager was precluded from voting. Hager contended that Roop did not have the authority to place Preference in bankruptcy by himself and therefore had improperly filed for bankruptcy on behalf of Preference. Because of Preference's allegedly improper filing, Hager claimed the bankruptcy court did not have subject matter jurisdiction over the proceeding and that the court should therefore dismiss the proceeding.

The bankruptcy court denied Hager's motion, holding that the doctrine of laches prevented Hager from raising his jurisdictional argument twenty months after Preference had filed for bankruptcy. JA at 128. Alternatively, the bankruptcy court ruled that notice to Hager of Preference's special meeting was sufficient and that Hager's failure to participate in that meeting constituted a waiver of any claim that Roop lacked authority to file for bankruptcy on behalf of Preference. JA at 129. Hager then timely appealed the order of the bankruptcy court to the district court.

The district court ruled that the doctrine of laches did not prevent a court from considering Hager's subject matter jurisdiction objection because either a party or the court sua sponte could raise the issue of subject matter jurisdiction at any time during a proceeding. JA at 228. Addressing the jurisdictional issue, the court first held that Roop's notice to Hager of the special meeting was sufficient. JA at 230. And, with regard to the validity of the resolution authorizing Roop to file for bankruptcy on behalf of Preference, the court held that although Hager was not barred from voting at the special meeting by virtue of his status as a secured creditor of the corporation, his delay of more than a year in complaining of Roop's action constituted a ratification by Hager of Roop's action which under Virginia corporate law validated, by relation back, the filing for jurisdictional purposes. JA at 231, 232. On this basis, the court denied Hager's motion to dismiss for lack of subject matter jurisdiction.

_____

**1** Rule 203 provides that "A voluntary petition . . . filed by a corporation shall be signed by an attorney and accompanied by a copy of the corporate resolution or other appropriate authorization, duly attested to, authorizing such filing." Loc. R. 203 (Bankr. E.D. Va.).

This appeal by Hager followed.

II.

The parties do not dispute the facts upon which the district court relied in making its jurisdictional ruling. The only issues on appeal, therefore, are issues of law that are reviewed de novo. See, e.g., Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991). Specifically, our "review of subject matter jurisdiction is plenary." Sea "B" Mining Co. v. Director, OWCP, 45 F.3d 851, 854 (4th Cir. 1995) (citing Tazco, Inc. v. Director, OWCP, 895 F.2d 949, 950-51 (4th Cir. 1990)).

Hager's contention is simple. His basic point is that under Price v. Gurney, 324 U.S. 100 (1945), a federal bankruptcy court has no power to entertain a voluntary petition for bankruptcy filed in behalf of a corporation by one then without authority under state corporate law to file for the corporation. Here, he says that--as the district court properly held--Roop lacked authority under Virginia law to file for Preference at the time of filing. And, he concludes, the bankruptcy court therefore never acquired jurisdiction to entertain the proceeding so that upon Hager's objection, the petition should have been dismissed.

The Trustee, in response, does not challenge the district court's determination that Roop was without authority under state law at the time of filing. But, she contends that--as the district court held-- under Virginia corporate law Hager's long delay in raising any objection to the filing constituted ratification by him, as holder of all the other corporate stock, of the filing by Roop in behalf of the corporation. And, she concludes, under Virginia law this ratification operated by relation back to validate the filing, hence to supply jurisdiction in the bankruptcy court to entertain the proceeding as of the time of filing.

Hager then counters that the district court erred in holding that his conduct constituted ratification under Virginia law, and alternatively, that ratification doctrine could not, in any event, be applied to correct a jurisdictional defect existing at the time of filing, because to do so would violate both the principle that subject matter jurisdiction cannot

5

be supplied by waiver or consent and the rule that subject matter jurisdiction is determined as of the time of commencement of an action.

We take these counter-contentions in order.

A.

Hager's reliance on Price v. Gurney is valid to a point, but the case does not take him as far as he needs and claims it to do. It does stand for the proposition that where a voluntary petition for bankruptcy is filed in behalf of a corporation, the bankruptcy court does not acquire jurisdiction unless those purporting to act for the corporation have authority under local law "to institute the proceedings." Id. at 106. And, for the corollary that where authority under local law is found lacking, the court "has no alternative but to dismiss the petition." Ibid. Price routinely has been interpreted and applied to that effect by bankruptcy courts. See, e.g., In re Globus Corp., 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996); In re Giggles Restaurant, Inc., 103 B.R. 549, 553 (Bankr. D.N.J. 1989); In re Stavola/Manson Elec. Co., Inc., 94 B.R. 21, 24 (Bankr. D. Conn. 1988); see also Keenihan v. Heritage Press, Inc., 19 F.3d 1255, 1258 (8th Cir. 1994).

Critically, however, Price did not address whether the required authorization under local law could be found in ratification/relation back doctrine. It therefore does not foreclose that possibility. And, as indicated, it is upon that doctrine that the Trustee, who does not now challenge the district court's determination that Roop was without authority at the time of filing, now relies.

We therefore turn to that contention.

B.

Virginia of course recognizes and applies the general rule, as expressed in Restatement (Second) of Agency § 82 (1958), that

> Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.

6

See, e.g., Kilby v. Pickurel, 396 S.E.2d 666, 668 (Va. 1990) (holding that one may ratify an unauthorized act by "accepting its benefits with full knowledge of the relevant facts, or, if upon learning of the act, he fails promptly to disavow it"); Brewer v. First Nat'l Bank of Danville, 120 S.E.2d 273, 279 (Va. 1961) (applying the principle, with relation-back effect, to validate ultra vires act of corporation).

We are aware of no Virginia case applying the ratification principle to validate unauthorized acts essential to judicial jurisdiction, but are satisfied that it would be so applied by the Virginia courts. No Virginia case of which we are aware suggests that it would not be, and other courts readily have applied ratification to validate by relation-back a jurisdiction originally lacking in the very way here in issue. See In re Martin-Trigona, 760 F.2d 1334, 1341 (2d Cir. 1985) (holding, on assumption of initial lack of authority to file voluntary petition in behalf of corporation, that corporation and sole stockholder "acquiesced in and ratified" filing by their ensuing participatory conduct); Boyce v. Chemical Plastics, Inc., 175 F.2d 839, 842-44 (8th Cir. 1949) (finding unauthorized filing ratified and jurisdiction thereby validated by later board of directors' resolution); In re I.D. Craig Service Corp., 118 B.R. 335, 337-38 (Bankr. W.D. Pa. 1990) (finding unauthorized filing by corporation president ratified by ensuing conduct of board of directors); In re Hawaii Times Ltd., 53 B.R. 560, 563 (Bankr. D. Haw. 1985) (recognizing potential for ratification of unauthorized filing by formal action of board); see also In re Atlas Supply Corp., 857 F.2d 1061, 1064 (5th Cir. 1988) (treating failure of fifty percent shareholder to object for over a year to allegedly unauthorized filing while participating in proceeding properly as"acquiescence" in bankruptcy proceeding); Globus, 195 B.R. at 265-66 (finding "acquiescence" by thirty percent shareholder in unauthorized filing by seventy percent shareholder without required unanimous shareholder consent).

We therefore conclude that under Virginia law, the unauthorized filing of a voluntary petition in bankruptcy in behalf of a corporation might be ratified in appropriate circumstances by ensuing conduct of persons with power to have authorized it originally. **2** Under such cir-

_____

**2** Which may be the corporation itself, through the conduct or formal action of its board of directors, see Martin-Trigona, 760 F.2d at 1341

7

cumstances, it could therefore serve as the local law source of the authority required by Price v. Gurney for a voluntary bankruptcy filing in behalf of a corporation.

As indicated, however, Hager challenges ratification's availability for that purpose in this case, both on factual and legal grounds. We take these in order.

1.

Hager first challenges the district court's legal/factual finding of ratification, claiming that the evidence does not support it. We disagree.

Hager points out that though he indisputably was aware in March, 1993, of Roop's intention to file for bankruptcy in behalf of the corporation, neither he nor his attorney received a copy of the March 29 resolution purportedly authorizing the filing. Hence, he says, an essential element of ratification--full knowledge on his part of the relevant facts--was not proven. This, however, disregards the undisputed evidence that as a creditor of the corporation he received notice from the Trustee of the ongoing bankruptcy proceeding in November, 1993, and that he received a turnover demand from the Trustee in December, 1993. The evidence therefore conclusively showed that Hager necessarily knew of the ongoing bankruptcy proceeding by no later than November of 1993. It further showed, without dispute, that Hager was properly served in an adversary proceeding brought by the Trustee in August, 1994, and that despite his obvious awareness of the proceeding's existence from November 1993 at the latest and his formal participation as a party to it from August, 1994, he raised no objection to its validity until December 20, 1994, more than a year

_____

(conduct of corporation and sole shareholder); Boyce, 175 F.2d at 842-44 (formal resolution of board); Craig, 118 B.R. at 337-38 (conduct of board), or, particularly in the case of small closely-held corporations, shareholders with voting power sufficient to have provided original authorization for the filing, see Atlas Supply , 857 F.2d at 1064 ("acquiescence" in filing by holder of remaining fifty percent of shares); Globus, 195 B.R. at 265-66 ("acquiescence" in filing by conduct of holder of remaining thirty percent of shares).

8

after his first undisputed awareness that it had been filed and four months after he had been made a formal party to it. During all this period Hager as a fifty percent shareholder in this closely held corporation received the benefits of the protection against the claims of creditors that was provided his equity interest by the automatic stay provisions invoked by the bankruptcy filing. During all this period, Hager took no step through available corporate governance procedures to attempt withdrawal of the corporation from the voluntary proceeding.

On this evidence, and under applicable local law, the district court's finding of Hager's ratification of Roop's filing was not clearly erroneous.

2.

Hager also contends, alternatively, that ratification, even if factually provable under local law, could not, as a matter of law, serve to supply the subject matter jurisdiction that was lacking in the bankruptcy court when the petition was filed. Two related reasons are advanced: (1) that this would constitute the forbidden creation of subject matter jurisdiction by party consent, and (2) that it would violate the rule that a federal court's jurisdiction is determined as of the date of an action's commencement. We disagree as to both.

The jurisdiction-by-consent contention simply misconceives the basis of the rule that subject matter jurisdiction cannot be so created. That rule is concerned with litigation conduct aimed at, or urged as having created, subject matter jurisdiction that does not as an objective matter exist. Thus, parties cannot by formally waiving the complete diversity requirement or failing to object to its absence create a diversity jurisdiction not otherwise present. See generally 5 A Charles Alan Wright & Arthur R. Miller, Fed. Prac. and Proc. § 1350, at 204-05 (2d ed. 1990).

Ratification conduct is not of this sort, but involves extra-judicial primary conduct by parties that does not purport to waive jurisdictional requirements nor to forego objection to their absence as incidents of a litigation process in which they may then or later be involved. Though its substantive effect may be, as in this case, the

9

supplying by relation-back of a necessary jurisdictional fact, the result is a court then proceeding with an objectively grounded jurisdiction rather than--as the no-jurisdiction-by-consent rule is intended to prevent--without it.

Hager's jurisdiction-determined-as-of-time-of-commencement contention also fails. It ascribes to and depends upon a greater rigidity in the rule than is warranted. As we pointed out in Rowland v. Patterson, 882 F.2d 97, 98 (4th Cir. 1989) (en banc), this rule is not one of statutory or constitutional limitation upon the jurisdiction of federal courts, but exists simply as "one of federal interstitial common law, judicially created, grounded in policy and necessity"--the necessity to have a generally applicable and easily administered rule. As such, it is not absolute but is subject to exceptions based upon countervailing policy concerns of efficiency, finality and fairness. For example, it has long been settled that a basis for diversity jurisdiction not present at the time of commencement of an action may be supplied by later voluntary acts of a plaintiff, though not of a defendant. Powers v. Chesapeake & Ohio Ry. Co., 169 U.S. 92, 101 (1898); Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1166 (4th Cir. 1988); see generally 14 A Charles Alan Wright et al., Fed. Prac. & Proc. § 3732, at 519-23 (2d ed. 1985). In such a situation, there is the anomaly also present in the instant case that the existence of jurisdiction can depend upon the timing of a jurisdictional objection, but that is simply an inescapable timing aspect of the adversarial process under which jurisdictional as well as merits issues are presented for resolution in our litigation system.

The relation-back principle, though a legal fiction, is a well established substantive one having wide application. See e.g., Caplin & Drysdale, Chtd. v. United States, 491 U.S. 617, 627 (1989) (applying relation-back principle to vest a government's right in forfeited property "at the time of the criminal act giving rise to forfeiture"). Its effect here, as an incident of the proven ratification of Roop's act, was to supply, as of the date of filing, the necessary authorization for that filing. The jurisdiction-as-of-commencement-of-action rule does not prevent that result. See Martin-Trigona, 760 F.2d at 1341 (so holding, assuming filing unauthorized at time); Boyce, 175 F.2d at 842-44 (same, where filing was unauthorized at time); Craig, 118 B.R. at 337-38 (same); Hawaii Times, 53 B.R. at 563 (same).

10

III.

Because we conclude that Roop's filing was ratified by Hager's ensuing conduct as holder of all other shares in Preference, we affirm the district court's denial of Hager's motion to dismiss for lack of subject matter jurisdiction in the bankruptcy court.

AFFIRMED

11