# Greensboro Gas Company, Appellant, *v.* Home Oil & Gas Company.

*Corporations—Contract—Directors—Quorum—Ratification.*

A natural gas company cannot allege that a contract to sell its gas to another company is invalid and not binding because it was not ap-proved at a meeting of the directors when a quorum was present, if it appears that negotiations leading up to the agreement were known to the members of the board of directors, that the other party had made large expenditures of money necessary to convey the gas to its mains, had appointed employees to read meters, had secured rights of way, and that both companies had treated the agreement as a valid contract and did everything required to be done under its terms for a considerable length of time.

Argued May 11, 1908. Appeal, No. 311, Jan. T., 1907, by plaintiff, from decree of C. P. Fayette Co., No. 498, In equity, dissolving preliminary injunction in case of Greensboro Gas Company v. Home Oil & Gas Company. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Bill in equity for an injunction. Before UMBEL, P. J.
The opinion of the Supreme Court states the case.

*Error assigned* was decree dissolving the injunction.

*H. L. Robinson*, of *Robinson, McKean & Martin*, for appellant.—When the contract appears upon the face of the corporate records to have been authorized by the directors, a third person, in the absence of knowledge or of circumstances putting him upon inquiry, need not look further, but has a right to presume that the record correctly relates the facts and that the authority was formally given at a board meeting : Manhattan Hardware Co. v. Phalan, 128 Pa. 110; Manhattan Hardware Co. v. Roland, 128 Pa. 119.

Even if irregularly entered into, the defendant company is estopped from repudiating the contract. It ratified it by its conduct : Gordon v. Preston, 1 Watts, 385 ; Manhattan Hardware Co. v. Phalen, 128 Pa. 110 ; Watts's App., 78 Pa. 370.

*D. M. Hertzog*, with him *Gans & Jones*, for appellee.—Ratification of an unauthorized act of an agent must, to be valid, be the voluntary act of the principal, he at the time of the supposed ratification being fully informed of all material facts and circumstances attending the unauthorized act, and such knowledge will not constitute a ratification if the act of the agent be forthwith repudiated by the principal: Pittsburg, etc., R. R. Co. v. Gazzam, 32 Pa. 340; Daley v. Iselin, 218 Pa. 515; Zoebisch v. Rauch, 133 Pa. 502 ; Moore's Exrs. v. Patterson, 28 Pa. 505 ; Mechem on Agency, sec. 148.

OPINION BY MR. JUSTICE ELKIN, June 2, 1908 :

This is an injunction bill filed to restrain the respondent company from selling or disposing of the natural gas produced from certain wells to any person or persons other than the complaining company and from interfering or tampering with the connections and appliances which have been or may hereafter be placed by the complainant on the premises for the purpose of obtaining the gas from said wells. The whole controversy depends upon whether a valid contract was entered into between the parties for the purchase and sale of the gas in the first instance, or, if the negotiations between the parties did not amount to a binding agreement, was there such a ratification by subsequent acts as to make an enforceable contract.

The learned court below, sitting as a chancellor, found as a fact that there was not a quorum present at the meeting of the board of directors, October 13, 1906, at the time a proposition was submitted by the complainant company to take all the gas produced by the two wells in question at the rate of four cents per 1,000 cubic feet, and concluded as a matter of law that nothing done or attempted to be done at that meeting would be binding on the respondent. We have concluded that this finding of fact and conclusion of law were justified under the facts and that there was no such manifest error as to warrant a reversal of the decree on this account. The only remaining question is as to a subsequent ratification, and this we think is important. In order to fully understand the situation of the parties it will be necessary to briefly recite some of the facts. The complainant company was in the business of selling gas to consumers. The respondent had developed some gas territory and could supply a limited amount of gas, but had no customers or pipe lines to supply them. It was deemed advisable to make an arrangement to sell gas to a larger company, and these conditions led up to the negotiations between the parties to this controversy. A meeting was arranged for and held at Smithfield on the date above mentioned at which were present several members of the board of directors of the respondent company as well as representatives of the complainant company, and of another gas company. At this meeting a resolution was adopted appointing a committee of three to make an agreement with the complainant and report to a future meeting. In this connection, it may be remarked, even if a quorum had been present, we do not agree that a resolution authorizing a committee to make and report an agreement is sufficient authority to authorize a committee so appointed to make and enter into a binding contract without reporting. The resolution evidently intended a preliminary agreement to be arranged by the committee and the final contract to be submitted for approval or disapproval at a future meeting. However, it is just as clear, that the board of directors were not only willing but anxious to make a contract for the sale of gas and took all the preliminary steps looking to the consummation of such an agreement. The committee so appointed, whether with proper authority or with-

out it, did attempt to close a contract with the complainant embodying the terms upon which to sell and deliver all the gas produced from the wells specified. On October 29, 1906, two members of the committee so appointed met the officers of the complainant company and concluded a formal contract, under the corporate seals of the respective corporations, signed by their presidents and attested by their secretaries. The contract thus executed was on its face regular in form, properly executed and attested, and presumptively was what it purported to be, that is, a contract between the parties, and in such a case the burden is on the corporation attempting to repudiate its terms, to rebut the presumption by showing that the officers did not have the authority to bind the company by the contract so executed. This burden is met in the present case as the court below has found, but while the officers were not authorized to execute the contract, they went ahead under the contract and did undertake to carry out its terms. They secured rights of way for complainant to lay its pipes for the purpose of transporting the gas to the mains of complainant, and they permitted the complainant at a cost of more than $2,000 to make the connections in order to carry out the terms of the contract and appointed an employee to read the meter in connection with an employee of the complainant company so as to determine the amount of gas taken daily. The employees reported to their respective companies the amount of gas turned into the mains of the complainant company each day. In other words, both companies treated the agreement as a valid contract and did everything required to be done under its terms for a considerable length of time. The complainant tendered payment for the gas taken, which was refused by respondent on the ground that a valid contract did not exist between the parties because no quorum was present at the time the committee was authorized to make and report a contract. After due consideration we are of opinion that in view of the negotiations between the parties, known to the members of the board of directors, and presumptively to the stockholders, the expenditure of money on the part of complainant necessary to convey the gas to its mains, the appointment of employees to read the meters, the securing of rights of way, and all the other acts done in furtherance of the terms of the

agreement, are sufficient in law to constitute a ratification of the contract attempted to be made, and which was in point of fact executed but without proper corporate authority.

Decree reversed and record remitted to the court below with instructions that the injunction be made permanent as prayed for.