O'Neill, Trustee, Appellant, *v.* Finnesey.

Argued December 5, 1929. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*J. J. O'Brien,* of *Fox, Rothschild, O'Brien & Frankel,* with him *Wessel, Bennett & Weiss,* for appellant.

*Francis S. Laws,* of *Lewis, Adler & Laws,* for appellee.

PER CURIAM, January 6, 1930:

The bill in this case was filed by plaintiff, trustee in bankruptcy of the estate of Finnesey & Kobler, Inc., and prays that defendant be declared to hold described real estate as trustee for plaintiff, that he be ordered to convey the same to plaintiff as an asset of the estate for which plaintiff is trustee, and that he account for rents and profits arising from the property, which, as alleged in the bill, defendant purchased and paid for with money diverted to his personal use without corporate authority and without consideration to the corporation.

The bankrupt corporation succeeded the copartnership of Finnesey & Kobler and was incorporated in 1909, with a capital of $50,000 with a capital stock issue of 1,000 shares of $50 par value each. Finnesey and Kobler each owned 500 shares. In 1916 Kobler died, and Finnesey purchased the former's shares. Thus in entire control, he transferred one share to his wife and one to his bookkeeper, Sokolove, to qualify them as directors, retaining 998 shares under his own control. He was president and general manager, and Sokolove became a director, secretary, treasurer and bookkeeper, and regularly received a salary for his services. In 1922 Finnesey withdrew from active management, leaving the business in charge of his son, the bookkeeper and another employee. In 1925 he withdrew entirely from the corporation, dividing his total stock between the three persons above mentioned, and at the same time making them a present of $50,000 cash, the full amount of the capital stock. The real estate in question was purchased by defendant while in active connection with the business and title to it was taken at the time by defendant individually. Sixteen months after his total severance from the corporation, the petition in bankruptcy was filed. The chancellor, after hearing, entered

a decree dismissing the bill, which was sustained by the court in banc.

The bookkeeper, who, as stated, was a director, secretary and treasurer of the corporation, was continuously and thoroughly informed of every detail of the business; opened and carried on all financial, sales and purchase accounts, as well as special accounts of defendant, as personally directed by Finnesey; attended to the banking transactions, received and paid out moneys for the corporation; paid to defendant whatever moneys the latter wished, and made the trial balances and balance sheets at the end of each month. In all these transactions he was guided and directed by defendant. He was thus a nominal stockholder, but having full knowledge and giving full consent to whatever he was directed to do in keeping the books and conducting the affairs of the concern, which was in fact, as the learned court below finds, "a one-man corporation" to which Finnesey gave daily his personal active management. Further material facts as found by the chancellor are, that the bookkeeper, acting in his various capacities, "fully recognized that the defendant was to all intents and purposes the owner of the business of the corporation and entitled to receive its earnings and profits; and all moneys received by said defendant from the corporate funds were recognized as a proper exercise of defendant's ownership"; that the real estate involved in the case was purchased by Finnesey partly from profits of the business and partly from his other and different financial resources; that the corporation was solvent throughout defendant's control and for sometime afterward; that the gift of $50,000 to his successors in control, together with the stock and material on hand and the bills receivable, gave the corporation over $20,000 in assets above its liabilities; that the debts the concern owed at the time of the withdrawal of defendant were paid in full previous to the time the petition in

bankruptcy was filed against the corporation, and that the capital stock was never impaired.

With these established facts before him, the dismissal of the bill by the chancellor was an inevitable conclusion. Defendant was in sole control and practically in sole ownership; all his corporate acts and directions were known to the other stockholders and by them acquiesced in as they occurred. "A strictly private corporation [such as this was], owing no peculiar duties to the public, has the same dominion over and power to dispose of its property as an individual has" (Wolf v. Excelsior A. & S. Co., Inc., 270 Pa. 547, 549; 10 Cyc. 1138); a corporation acts by its directors and, practically, for the purpose of binding it, they are the corporation (Beltz v. Garrison, 254 Pa. 145, 153); and if ratification were needed, the silence and inaction of the company's officers and stockholders provided it (Atherton v. Beasman, 256 Fed. 871, 875) and; when the stockholders are silent, make no objection whatever, by this acquiescence they will be taken as assenting: Balliet v. Brown, 103 Pa. 546, 554.

As stated, there were no creditors, but an attempt was made to show that income tax returns of the corporation had been falsified and that the United States was a creditor. But, as the chancellor and the court below found, and as our examination of the record also shows, no evidence was introduced to prove that the United States was making any claim.

The judgment of the court below is affirmed at appellant's costs.