## McCay v. Luzerne and Carbon County Motor Transit Company, Appellant.

218

Argued November 9, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Adrian H. Jones*, with him *George A. Shutack,* for appellant.

*Gilbert Nurick* and *McNees, Hollinger & Nurick,* with them *George E. Gray,* for appellee.

Opinion by Baldrige, J., January 29, 1937:

This appeal is from an order of the court of common pleas of Carbon County discharging the rule to open judgment entered on a warrant of attorney contained in a note, one of a series of four, executed by the defendant company. Judgment was confessed separately on the several notes, and petitions to open were presented thereafter. It was stipulated by the parties in the court below that the same question as is raised in this appeal is involved in each of the applications to open judgment and that the decision of this court will apply to all four of the pending cases.

Prior to September 6, 1932, the plaintiff was associated with Wasil, Michael and John Baran in certain business enterprises, which included the Luzerne and Carbon County Motor Transit Company, the defendant. This corporation had 1170 shares outstanding, of which 956½ were owned by the Barans, who were the principal executive officers, 132½ by the plaintiff, and 81 by three other stockholders. The plaintiff, desiring to withdraw from his joint activities with the Barans, addressed identical letters to them on August 29, 1932, wherein he stated his desire to dispose of his various interests, including his stock in the defendant company. The parties came to terms and their agreement, reduced to writing, provided as follows:

"Wasil Baran, Michael Baran and John Baran, 3rd ...... agree that the Corporation shall purchase from William D. McCay the latter's stock in this Corporation amounting to 132½ shares for the sum of $13,250.00. $4,000.00 of this sum shall be paid to William D. McCay on September 6, 1932. They also agree that the Corporation shall execute and deliver unto William D. McCay four judgment notes for $2312.50 each ...... These notes shall be endorsed by each of the Barans. It is agreed that William D. McCay shall retain title to his stock until full payment has been made.

"It is also agreed that William D. McCay shall receive the Baran's votes as a member of the Board of Directors until such time as the entire amount of $13,250.00 be paid. For his services as member of the Board of Directors, William D. McCay shall receive the sum of $100.00 per month. William D. McCay in return for said sum of $100.00 per month, agrees to waive all and any interest on the notes above mentioned and agrees to give such help and advice to the Corporation as he reasonably can."

McCay, as secretary, orally called a meeting of the directors of the defendant company to be held September 6, 1932, to take appropriate corporate action to effectuate the sale. Four of the five directors responded to the call. The fifth director, John Kotch, admitted notice, and testified that he had deliberately absented himself because he did not want to vote either way on the proposition. At this meeting, the Barans, individually, signed the agreement referred to, and Wasil Baran, as president, and Michael Baran, as treasurer, executed the corporate judgment notes and the three Barans, on the back thereof, guaranteed payment. In lieu of paying McCay the $4,000 cash prescribed by the agreement, the defendant company, with the consent of McCay, assumed $4,000 of his obligations to the American Bank & Trust Company, giving in exchange therefor its own note.

McCay transferred his business interests to the Barans and his stock to the company upon the terms set forth in the agreement. On February 14, 1933, the annual stockholders' meeting of the defendant company was held, and John Baran offered a resolution, which was adopted, declaring the agreement and notes and acts of the Barans purporting to bind the company invalid, by reason of the fact that the notes were not authorized by the vote of the board of directors, as required by section 9, Article 4, of the by-laws, which pro-

vided that no officer or agent could contract any liability or issue any bill, note, check or negotiable instrument unless specifically authorized by the vote of the board of directors and duly recorded in the minutes. We note, in passing, that the appellant failed to quote another part of this section, which reads as follows: "All bills, notes or other negotiable instruments of the Company, shall be made in the name of the Company, signed by the Treasurer or his assistant and countersigned by the President, or in his absence by the Vice-President." The notes were signed, therefore, in accordance with that provision and also with section 2 of the Act of 1925, May 12, P. L. 615 (15 PS §61).

On the same day, the Barans and Kotch met as the board of directors, removed McCay as secretary, and specifically repudiated the agreement. No notice of the action of either the stockholders or the board was ever given to McCay, and the bank had no knowledge that the company would no longer recognize its note of $4,000 until over a year thereafter, to wit, March 17, 1934. The corporation, with full knowledge of its officers, stockholders and directors of the agreement, paid McCay four months' salary, at the rate of $100 per month as provided by the agreement, and the interest and part of the principal of the note to the bank. The payments to the bank were made after it had filed a petition, on February 28, 1934, to open the judgment confessed by McCay, November 3, 1932.

McCay testified that it was the custom of the company to give verbal notice only of the monthly and special meetings of the board; that notwithstanding the minute book did not contain the resolution approving the agreement and authorizing the execution of the notes, it had been passed, that he, as secretary, had written it in the minutes, and it appeared therein when he surrendered the minute book. He contended that the corporation, by its conduct, had subsequently rati-

fied its action. The appellant denied McCay's testimony and controverted the argument of ratification, but the learned trial judge held that the depositions, covering over 500 pages of record taken in pursuance of the petitioner's rule, supported McCay's version of what had transpired, and adopted his argument as to ratification.

Any action taken at a meeting called by an oral notice was not necessarily invalid. "The rules with reference to special meetings, the validity of the business transacted, and the necessity of notice like many other rules respecting the mode of corporate action may be overcome by proof of contrary custom or usage of acting on the part of the directors": 2 Thompson on Corp. §1244. In re *Redstone Twp. School Dist.*, 284 Pa. 325, 131 A. 226, involving the validity of a special meeting of school directors, passing upon certain resignations, the court discussed fully the rules to be applied in determining whether a meeting has been properly called. It was held that actual notice of a special meeting of a corporation must be given to everyone in interest and that the purpose of the meeting must be disclosed, either by writing or orally. If the directors attend, there is a surrender of the right to object to defects in the manner of service or the substance of the notice.

Nor is the absence from the minutes of the resolution authorizing the execution of the note in suit necessarily fatal to its validity if corporate action was, in fact, taken. The rights of McCay, whether the absence of the proper record was by design or neglect, cannot be thereby prejudiced: 5 Fletcher Cyc. of Corp. §2190 p. 516; 3 Thompson on Corp. §1952. The minutes were not conclusive (14 C. J. §1435) ; they did not constitute the only evidence that the directors approved the execution of the notes. Corporate action may be proved by parol evidence where no formal resolutions appear in minutes: 2 Thompson on Corp. §1269.

Assuming, arguendo, that the meeting of September 6, 1932, attended by McCay and the Barans, was illegal and that the execution of the notes was not properly authorized, it is well established that the proceedings of directors at an illegal or irregular meeting may be ratified at a subsequent legal meeting or by the corporation's adopting the acts of its representatives: 2 Fletcher Cyc. of Corp. §429, p. 752; 64 A. L. R. 724. Courts will not aid a corporation to procure benefits by conduct that is repugnant to every sense of justice and fair dealing: *Presbyterian Board v. Gilbee*, 212 Pa. 310, 61 A. 925.

In *Gordon v. Preston*, 1 Watts 385, 387, a judgment creditor of the corporation, by a feigned issue proceeding, attempted to procure a decision invalidating a mortgage created by the corporation, on the ground that it was executed at a special meeting convened without notice and not attended by all members although a quorum was present. GIBSON, C. J. speaking for the court, said:

"But can the act be impugned now? A corporation can contract but by its agents, general or special; and in pursuance of powers delegated specially by its grant to particular persons, or generally, by its charter, to the officers entrusted with its affairs. Hence, the members of this board stood in relation to it, as servants whose acts may be disaffirmed for defect of authority, but by their master. But the maxim which makes ratification equivalent to a precedent authority, is as much predicable of ratification by a corporation as it is of ratification by any other principal, and it is equally to be presumed from the absence of dissent. Now the validity of this mortgage is unquestioned by the corporation even at this day, though its existence has all along been known to the corporate officers, whose duty it was to disavow it, had there been an intent to contest it." See, also *Greensboro Gas Co. v. Home Oil & Gas Co.*,

222 Pa. 4, 70 A. 940; *McBride, Admx., v. W. Pa. Paper Co.,* 263 Pa. 345, 106 A. 720; *S. G. V. Co. v. S. G. V. Co.,* 264 Pa. 265, 107 A. 721; *O'Neill, Trustee, v. Finnesey,* 299 Pa. 97, 149 A. 103.

As the lower court points out, since the Barans are in control of the corporation and are now owners of practically all the stock, it is in their power to carry out the agreement; but they are attempting to use the corporate identity to evade liability, after a full performance on the part of McCay, whom, admittedly, they cannot now place in status quo. Courts do not take a "skin-deep view" of a situation like that presented here (*Kendall v. Klapperthal Co. et al.,* 202 Pa. 596, 607, 52 A. 92), but look behind that artificial personality to get at the substance of the transaction, and, if need be, ignore the corporate entity altogether: *S. G. V. Co. v. S. G. V. Co.,* supra (264 Pa. 265, 269, 107 A. 721).

In *Stony Brook Lumber Co. v. Blackman et al.,* 286 Pa. 305, 133 A. 556, the corporation filed a bill against defendants, former president and secretary of the corporation, and owners of 1100 shares of its stock, alleging that they had received corporate property in payment of their stock sold to Carter, director and vice-president, who owned the rest of the stock, except 2 shares held by his wife. Carter had given corporate notes to assist in raising the consideration paid therefor. It was held that Carter, in the absence of creditors, could dispose of the corporate property as he pleased, and his action was treated as that of the corporation. The bill was therefore dismissed.

But, setting aside this equitable rule, the company and all its stockholders ratified the execution of the notes by continuing to pay salary to McCay and the interest and part of the principal of the note it gave in substitution of McCay's note, after having full knowledge of the facts. Having recognized the agreement of the corporation to purchase the stock, it cannot now

impeach its acts which were done in pursuance thereof.

The appellant argues, also, that the purchase by the corporation of its own stock affected its solvency, and, therefore, the agreement was not binding.

A corporation in Pennsylvania may, undoubtedly, purchase its own stock, if the rights of creditors are not prejudiced: *Dock v. Schlichter Jute Cordage Co.,* 167 Pa. 370, 31 A. 656; *Beltz v. Garrison et al.,* 254 Pa. 145, 98 A. 956; *Wolf v. Excelsior Auto. Scale & Sup. Co.,* 270 Pa. 547, 113 A. 569; *Illoway v. Daly,* 65 Pa. Superior Ct. 333.

Certain testimony was introduced to show the value of appellant's property. It appears, however, that there was not included, in the stated assets, cash in bank, accounts receivable, value of the franchises, etc. The value placed on certain property was evidently very low, and the trial judge apparently received the impression, as we do, that the evidence respecting the appraisal of the corporation property was not reliable. We think also he correctly concluded also, that the corporation had not been rendered insolvent by this purchase, or that there was a reckless increase in its indebtedness, or that it was detrimental to its creditors to purchase a small part of its captial stock, as the debt created as a result thereof was but a small proportion of its capital indebtedness.

The appellant further contends that the giving of the judgment notes not having been approved by the Public Service Company was in violation of the Public Service Act of 1913, July 26, P. L. 1374, art. III, §4(a), as amended 1933, June 3, P. L. 1526, §4 (66 PS §201). This point was not raised at any time in the lower court, and is not set forth in the statement of questions involved or in any assignment of error. Under our decisions, it cannot be raised for the first time upon appeal: *Colflesh v. Provident Trust Co. of Phila.,* 317 Pa. 46, 176 A. 433. Furthermore, the amendment invoked was

not passed until 1933 and these notes were executed in 1932.

The appellant, seeking an equitable remedy, had the burden of convincing the chancellor that good faith was shown, and that, to meet the ends of justice, relief should be afforded: *Mielcuszny et ux. v. Rosol et ux.*, 317 Pa. 91, 176 A. 236. This it failed to do.

The appeal is dismissed, and order of the court below is affirmed.