**In re AUDUBON QUARTET, INC., Debtor.**

No. 7–01–05218.

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

April 3, 2002.

Howard J. Beck, Roanoke, VA, for debtor.

Roy V. Creasy, Roanoke, VA, trustee.

## DECISION and ORDER

ROSS W. KRUMM, Bankruptcy Judge.

Before the court is a motion to dismiss the Chapter 7 petition of the above-styled corporate debtor and a motion for entry of an order that certain state court orders

are null and void. A creditor argues that the post-petition ratification of the corporation's bankruptcy filing by the board of directors was invalid. The corporation argues that post-petition orders entered by a state court violated the automatic stay imposed by 11 U.S.C. § 362. Both motions were heard on February 12, 2002, after which the court took the matters under advisement. Since the court finds that the board of director's ratification of the corporation's bankruptcy filing was invalid the case will be dismissed within 25 days of the docketing of this order.

## BACKGROUND

The facts are not in dispute. The Audubon Quartet ("Quartet") is incorporated as a Section 501(c)(3) non-profit entity under the laws of Commonwealth of Pennsylvania. For the times relevant to this case, the composition of the Quartet included Clyde Shaw ("Shaw"), Doris Lederer, Akemi Wiencko, and David Ehrlich ("Ehrlich"). On February 21, 2000, Shaw, the president of the Quartet, notified Ehrlich by letter that he was to be immediately terminated from the organization. On May 30, 2000, Ehrlich filed a lawsuit against the Quartet and its remaining members in the Allegheny County Pennsylvania Court of Common Pleas. In mid October 2001, the court issued an adjudication (consisting of an Opinion and Adjudication and a Decree Nisi) finding the Quartet and the extant members jointly and severally liable in the amount of $611,119.24.

On December 12, 2001, the Quartet and its remaining members filed petitions for relief under Chapters 7 and 13 respectively. As president, Shaw filed the Chapter 7 petition for the Quartet and noted on the petition that the board of directors would ratify the filing within ten days. The

board of directors was unable to pass a pre-petition resolution to authorize the filing of a bankruptcy petition due to a preliminary injunction entered by the state court enjoining the board from holding any meeting.

On December 26, 2001, the board of directors for the Quartet convened a special meeting to ratify the Chapter 7 filing. The minutes from the special meeting state that notice was duly sent to the directors of the Quartet. The minutes further indicate that Richard Burian, Doris Lederer, Shaw, and Ehrlich were physically present and that Timothy Carter, Stewart Rawnsley, and Akemi Takayama Wiencko were purportedly present by proxy. Despite a number of objections posed by Ehrlich, the board decided to ratify the bankruptcy filing by a vote of six to one.

The Quartet's articles of incorporation govern both special meetings and the rights and duties of the board of directors. Article Four, entitled "Meetings," contains six paragraphs. The first paragraph discusses annual membership meetings; the second establishes dates for regular member meetings; the third states that seven members shall constitute a quorum, the fourth discusses special meetings called by the president; the fifth paragraph governs special meetings called by a quorum of the board or a quorum of members; and the last paragraph limits the scope of business that may be addressed at a special meeting.

Article Seven, entitled Board of Directors, states that "[six] of the members of the board of directors shall constitute a quorum and the meetings of the Board of Directors shall be held regularly .... By unanimous consent of the Board of Directors, said meetings may be held by telephone."[1] Following that paragraph,

---

1. On October 21, 1998, at joint meeting of the    members and the board of directors, the num-

the next one states that "[e]ach director shall have one vote and such voting may not be done by proxy."

Ehrlich argues that the prohibition against board member proxy voting applies to all meetings involving the board; thus, the purported ratification of the bankruptcy filing, which included three proxy votes, was in violation of the Quartet's by-laws. Moreover, Ehrlich argues that even if the by-laws are silent with respect to proxy voting at special meetings Pennsylvania law requires the physical presence of directors at board meetings. 15 Pa. Cons.Stat. § 5727(a) states that "the acts of a majority of directors present at a meeting at which a quorum is present shall be the acts of the board of directors." Physical or telephonic presence by board members, according to Ehrlich, is required because of the fiduciary duties a director owes to a corporation. Ehrlich also points out that only when discussing "members" does Pennsylvania law specifically provide for proxy voting.

The Quartet argues in response that the by-laws do not expressly prohibit proxy voting at special meetings. Article Four, which governs special meetings, is silent in this respect. The Quartet further argues that Pennsylvania law does not clearly resolve whether directors may vote by proxy. In support of its position that Pennsylvania recognizes director proxy voting, the Quartet cites 15 Pa. Cons.St. § 5729(A) & (B). Section 5729 provides:

(a) General rule.—Unless otherwise provided in a bylaw adopted by the members every director shall be entitled to one vote.

(b) Multiple and fractional voting.—The requirement of this article for the presence of or vote or other action by a specified percentage of directors shall be satisfied by the presence of or vote or

other action by directors entitled to cast such specified percentage of the votes which all directors are entitled to cast.

The Quartet argues, in the alternative, that the corporation should be granted leave to ratify the bankruptcy filing. The Quartet proffered in open court and in its memorandum of law that the board of directors is ready and willing to properly ratify the bankruptcy filing should the court find the prior ratification invalid.

The Quartet also moves the court to determine that post-petition orders entered by the Pennsylvania Court of Common Pleas are null and void since they were entered in violation of the automatic stay of 11 U.S.C. § 362(a). Ehrlich opposes the motion and argues, among other things, that the entry of a final adjudication on December 21, 2001 was ministerial in nature, since the court previously ruled on any matters that could have reduced the money judgment before the corporation's bankruptcy petition was filed.

There are two issues before the court: (1) whether the board's vote on December 26, 2001 properly ratified the bankruptcy filing; and (2) if the corporation can remain in bankruptcy, does the automatic stay nullify and avoid the post-petition orders of the state court. The court will address the issues in *seriatim*.

## ANALYSIS

The court begins with Ehrlich's motion to dismiss wherein he argues the board's ratification of the bankruptcy filing was unauthorized. Ehrlich does not cite a statutory basis or any authority to support his contention that an unauthorized ratification by a board of directors of a bankruptcy filing gives the court cause to dismiss a corporation's bankruptcy case. Despite the fact that Ehrlich's position is best de-

ber for a quorum "for all Board of Directors'      meetings" was reduced from seven to six.

scribed as a mere *nudum argumentum,* the court agrees.

Apart from the "voluntary" requirement of 11 U.S.C. § 301, the Bankruptcy Code does not specifically establish "the internal requisites . . . for the initiation of a voluntary corporate bankruptcy proceeding." *In re Autumn Press, Inc.,* 20 B.R. 60, 61 (Bankr.D.Mass.1982). To date, Congress has remained quiescent on the matter. The Local Rules do not provide guidance either, stating only that the corporate debtor must file a copy of appropriate written authorization or the corporate resolution authorizing the filing. Bankr. W.D.Va. Local R. 1074–1 & 5005–1.

■ In *Price v. Gurney,* 324 U.S. 100, 104, 65 S.Ct. 513, 89 L.Ed. 776 (1945), however, the Supreme Court recognized that "the initiation of. . . [bankruptcy] proceedings, like the run of the corporate activities, is left to the corporation itself, i.e., to those who have the power of management." The Court then stated that management power is governed by state law. *Id.* Accordingly, this court must look to the substantive law of the state of incorporation to evaluate the propriety of corporate action. *See In re Milestone Educ. Inst., Inc.,* 167 B.R. 716, 720 (Bankr.D.Ma. 1994) (stating "authority to file a bankruptcy depends upon the corporate documents and state law").

■ It is well-settled, and there is no dispute in this case, that the power and right to manage the corporation is vested in the board of directors. *See* 15 Pa. Cons.St. § 5721 (stating that the powers of a corporation are vested in the board of directors). Indeed, Article Seven of the Quartet's by-laws vests the control and management of the organization in the board. Furthermore, it is not contested that the filing of a corporation's bankruptcy petition is an act that requires approval by the board of directors. *See* 15 Pa. Cons.St. § 5903 ("Whenever a business

corporation is insolvent or in financial difficulty, the board of directors may, by resolution and without the consent of the members, authorize and designate the officers of the corporation to execute a deed of assignment for the benefit of creditors, or file a voluntary petition in bankruptcy. . . ."). *See also In re Giggles Restaurant, Inc.,* 103 B.R. 549, 553 (Bankr.D.N.J. 1989) (recognizing as a general proposition that power to file bankruptcy rests with the board).

Section 5727(a) of the Pennsylvania Nonprofit Corporation Law states the general rule that "[u]nless otherwise provided in the bylaws, a majority of the directors in office shall be necessary to constitute a quorum for the transaction of business and the acts of a majority of the directors present at a meeting at which a quorum is present shall be the acts of the board of directors." The by-laws of the Quartet state that the board shall consist of eleven directors and that six directors shall constitute a quorum.

Here, the ratification vote held on December 26, 2001, was invalid. There were, at most, four directors present at the meeting. When applied to the standards and requirements set forth above, the purported ratification vote cannot pass muster. As indicated in the minutes, the tally of votes (six to one) to ratify the bankruptcy filing counted both the presence and votes of non-attending directors by way of proxy. This act by the board does not comply with the by-laws of the corporation nor the laws of the state.

■ Initially, the court notes that the Quartet's by-laws do not expressly authorize the directors to be "present" at board meeting by proxy. Instead, directors may, upon unanimous consent, appear telephonically. However, there is no provision in the by-laws or in Pennsylvania law that would allow a director to have another

director vote in his or her absence. Article Seven in the by-laws explicitly forbids proxy voting by directors. The paragraph stating such is unequivocal and unqualified.

The Quartet would like this court to find that proxy voting by directors is allowed based on Article Four, but the court is unable to locate any provision in the article that permits proxies. Article Four is absolutely silent as to proxy voting for both members and directors. In light of 15 Pa. Cons.St. § 5103, which authorizes proxies for members, if the by-laws so provide, it does not appear that the even the members of the Quartet can utilize proxies, much less the directors. In light of the unambiguous provision in Article Seven, the court is unwilling to infer that directors can vote by proxy at special meeting simply because a prohibition against doing so was not expressly stated in Article Four.

The court also finds the Quartet's reliance on Pa. Cons.Stat. § 5729 to be unavailing. Far from authorizing or even recognizing proxy voting by directors, § 5729 simply recognizes that a corporation may allocate to a director a multiple or fractional vote. Section 1729 of the Pennsylvania Consolidated Statutes contains a similar provision. In pertinent part, subsection (b) of § 1729, entitled "Multiple and fractional voting," states that "[a]ny requirement of this subpart for the presence of or vote or other action by a specified percentage of directors shall be satisfied by the presence of or vote or other action by directors entitled to cast the specified percentage of the votes that all voting directors in office are entitled to cast." The 1998 Committee Comment to Pa. Cons.St. § 1729 states "[i]t is intended that this provision will apply broadly so as to authorize, among other things, the adoption of provisions creating nonvoting directorships or directorships which do not

vote during certain periods or under certain circumstances, or otherwise shifting voting power."

Provisions such as these merely allow certain classes of corporations to unevenly allocate voting power among the directors. The Pennsylvania Legislature recognized that unequal voting rights for directors of non-profit and closely held corporations may be useful in structuring the governance of such corporations. *See* Pa. Cons. St. § 2526 (Committee Comment). The court is unwilling to accept that these sections can be read to authorize or even condone proxy voting by directors. The Quartet's reliance on § 5729 is unhelpful.

■ The general rule is that directors cannot vote by proxy, but must be physically present to act themselves. *See* Fletcher Cyclopedia Corporations § 427 (Perm. ed.). *Cf.* 15 Pa. Cons.St. § 5103 (authorizing member proxies if specifically provided for in the by-laws). Based on the express prohibition of proxy voting in Article Seven and the general rule disfavoring the usage of proxies by directors, this court is compelled to reject the Quartet's position that proxy voting in special meetings is permitted since it is not expressly prohibited in Article Four. The board's purported ratification of the bankruptcy filing is invalid.

■ Generally, if a board's resolution or ratification is invalid, the petition must fail. *See Price,* 324 U.S. at 106, 65 S.Ct. 513 (stating court must dismiss a petition that is found lacking authority under local law). *See also In re Giggles Restaurant, Inc.,* 103 B.R. at 554 (declining to exercise jurisdiction over corporation's voluntary proceeding since the resolution authorizing the filing was not attended by a quorum); *In re Stavola/Manson Electric Co.,* 94 B.R. 21 (Bankr.D.Conn.1988) (dismissing corporation's bankruptcy petition as improperly filed by the president); *In re Autumn*

*Press,* 20 B.R. at 62 (dismissing a corporation's bankruptcy petition because there was no quorum of directors present at the meeting where the resolution to file bankruptcy was adopted).

■ Before outright dismissing the Quartet's case the court recognizes that it traditionally pays heed to equitable principles as it proceeds through a case. *See Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). The court also recognizes that courts do not generally favor a creditor's motion to dismiss a corporate bankruptcy due to improper authorization by the directors. Admittedly, this sentiment is generally based on the suspicion that a creditor may not be trying to protect the rights of shareholders, but instead trying to protect transfers to it that may be avoided by the bankruptcy trustee for the benefit of all the creditors. *See In re John Hicks Chrysler-Plymouth, Inc.,* 152 B.R. 503, 510 (Bankr. E.D.Tenn.1992) (citing *Chicago Bank of Commerce v. Carter,* 61 F.2d 986 (8th Cir. 1932); *In re Fox West Coast Theatres,* 25 F.Supp. 250 (S.D.Cal.1936), *aff'd,* 88 F.2d 212 (9th Cir.1937)). Furthermore, the court does not believe it is proper, equitable, or efficient to turn a deaf ear to the Quartet's proffer that a proper ratification can be obtained. Indeed, the minutes of the December 26, 2001 meeting corroborate this tender.

Upon proper ratification, the unauthorized acts of the board will be duly adopted by the corporation. *See McCay v. Luzerne and Carbon County Motor Transit Co.,* 189 A. 772, 774, 125 Pa.Super. 217, 223 (1937) (stating "is well established that the proceedings of directors at an illegal or irregular meeting may be ratified at a subsequent legal meeting or by the corporation's adopting the acts of its representatives"). The *McCay* court also recognized the maxim which makes "ratification equivalent to a precedent authority." Sim-

ilarly in *Hager v. Gibson,* 108 F.3d 35 (4th Cir.1997), the court affirmed the district court's denial of a motion to dismiss a corporation's bankruptcy filing. The movant argued, among other things, that the corporation was improperly placed in bankruptcy; thus, the bankruptcy court never acquired jurisdiction over the case even if the filing was later ratified. The Fourth Circuit rejected the argument and held that the required authorization may be supplied by ratification and relation back. The court stated that under Virginia law, ratification works to bind the principal as if the otherwise unauthorized act was originally authorized. *Id.* at 39. The court further held that the post-petition ratification and the principle of relation back provided the needed authorization under local law, and, consequently, the jurisdiction of the bankruptcy court. *Id.* at 39–41.

■ Based on the *McCay* case and the principles announced in *Hager,* the court believes it is appropriate to allow the Quartet time to prove up its proffer that proper corporate ratification can be obtained. If ratified, proper authority will be established and the doctrine of relation back, implicitly recognized in *McCay,* would render the Quartet's bankruptcy petition indomitable against the grounds for dismissal presented here. However, should ratification not be forthcoming, the case must be dismissed.

In light of the foregoing, it appears that the Quartet's motion to determine certain post-petition state court orders null and void is not ready for decision. Unless the Quartet can ratify the bankruptcy filing, the Quartet's bankruptcy case will be dismissed and the motion to nullify the state court orders will be moot. Thus, the court will forebear ruling on the Quartet's motion until the issue presented in Ehrlich's motion to dismiss is resolved.

CONCLUSION

In order to act for the corporation, the board of directors must comply with local laws and the documents of the corporation. The purported ratification by the Quartet's board of directors was ineffectual since it involved the use of proxies. Were it not for the principle of ratification and the proffers of the Quartet, coupled with the seemingly clear intent of a majority of the board to ratify the bankruptcy filing, the court would be constrained to dismiss the case immediately. As stated above, the court believes that equity, efficiency, and a regard for the apparent substance of this case (i.e., an attempted, albeit ineffectual, ratification by the majority of the board), necessitate the court's granting a period of time in which the Quartet can ratify the filing; otherwise, the case will be dismissed.

Accordingly, it is

ORDERED:

That the bankruptcy case of the Audubon Quartet, Inc. shall be dismissed by entry of the court's form order of dismissal twenty-five (25) days after the docketing of this Decision and Order, unless proof of proper ratification of the corporation's bankruptcy filing is filed with the court prior to the expiration of the twenty-five (25) days. It is

FURTHER ORDERED:

That if proof of proper ratification of the corporation's bankruptcy filing is timely filed the Motion to Dismiss will be DENIED without further notice or hearing.