## In re AUDUBON QUARTET, INC., Debtor.

### No. 7–01–05218.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

July 29, 2002.

Richard C. Maxwell, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, for David Ehrlich.

Howard J. Beck, Jr., Lori D. Thompson, Gentry, Locke, Rakes, and Moore, Roanoke, VA, for Audubon Quartet, Inc.

Roy Creasy, Roanoke, VA, trustee.

## DECISION and ORDER

ROSS W. KRUMM, Chief Judge.

Before the court is a motion to dismiss the Chapter 7 petition of the above-styled corporate debtor. A creditor and former director argues that the post-petition ratification of the corporation's bankruptcy filing by the board of directors was invalid since the notice for the special meeting, at which the board voted in favor of ratification, was not sent by a proper officer, as required by the corporation's by-laws.

## I. BACKGROUND

In 1979, the Audubon Quartet, Inc. (hereinafter "Quartet") was incorporated as a Section 501(c)(3) non-profit entity under the laws of the Commonwealth of Pennsylvania. Since its inception, the Quartet has, at times, failed to follow and adhere to corporate formalities. In particular, the company has neglected to maintain properly elected corporate officers. Counsel for the Quartet described that, contrary to the by-laws, the Quartet's officers were informally appointed to the various positions on an annual rotating basis.

Apparently, this informal means of ap- pointment ensured that each member of the Quartet was allowed to serve as the president, vice president, secretary or treasurer, respectively.[1] No party dis- putes this characterization of the Quartet's dealings and there has been no proffer to the contrary.

It appears that the initial officers of the Quartet were Clyde T. Shaw (hereinafter "Shaw"), president; Dennis Cleveland, vice president; Sharon Smith, secretary; and Doris Lederer (hereinafter "Lederer"), treasurer. *See* Debtor's Mem. in Opp'n to Ehrlich's Mot. to Dismiss, Ex. 1, Minutes of the First Membership Meeting of the Audubon Quartet, Inc. at 22–M & 24–M, March 26, 1980. As the composition of the musicians playing for the Quartet changed, the make-up of the officers changed as well. For example, as of October 21, 1988, the officers consisted of Shaw as president, David Ehrlich (hereinafter "Ehrlich") as vice president,[2] David Salness as secre- tary, and Lederer as Treasurer. *See id.,* Ex. 1, Joint Meeting of Members and Di- rectors of Audubon Quartet, Inc. at 6, Oc- tober 21, 1988.

It is not clear who the last officially elected officers were or what specific offi- cial positions the individuals occupied. At present, the Corporation Bureau of the Pennsylvania Department of State has no record whatsoever of any officers for the Quartet. The Virginia State Corporation Commission, however, lists Lederer as the vice president (acting president), Shaw as the secretary, and Ehrlich as treasurer.

Other than special meetings (discussed below), the Quartet's board last met on January 22, 2000. The minutes of that meeting indicate that Shaw was the chair- man of the board and the president of the Quartet. In fact, the minutes show that Shaw stated "[a]s President of the Corpo- ration and convener of this meeting, and as one who has been concerned for some time the Corporation be run in a formal, legal and thorough manner, I will be acting as the chairman of this meeting. . . . Not only have we been lax in meeting as a Board at the prescribed time, but we have failed to keep accurate records of the times we have convened." Debtor's Mem. in Opp'n to Ehrlich's Supp. Pleading to Mot. to Dis- miss, Attach. A, Special Meeting of Di- rectors of Audubon Quartet, Inc. at 2.

The minutes further reveal that Ehrlich attended the January 2000 meeting and did not object to the description of Shaw as president of the Quartet. Ehrlich was, in fact, elected as one of the "Inspectors of Election" to monitor the vote for new board members. Additionally, the minutes show that Ehrlich corroborated Shaw's de- scription of the Quartet's adherence to cor- porate formalities. Following the vote to elect new directors, Ehrlich was quoted as saying that "the way we were running it [the board of directors] was a joke." *Id.,* Attach. A, Special Meeting of Directors of Audubon Quartet, Inc. at 5.

On December 12, 2001, the Quartet filed a petition for relief under Chapter 7 of the Bankruptcy Code. The filing of the bank- ruptcy petition was precipitated by an ad- judication issued in favor of Ehrlich by the Allegheny County Pennsylvania Court of Common Pleas, which found the Quartet, Shaw, Lederer, and Akemi Takayama

---

1. A Pennsylvania state court also recognized that the Quartet's officers filled their positions on an informal rotating basis. *See Ehrlich v. Audubon Quartet, Inc.,* No. GD 00–9438 (Pa. Ct.Com.Pl. Oct. 12, 2001) (Opinion and Adju- dication).

2. According to the uncontested oral and writ- ten statements of counsel for the Quartet, Ehrlich has been a member of the Quartet's board for nearly sixteen years. During that time he has consistently served as an officer of the Quartet.

Wiencko jointly and severally liable in the amount of $611,119.24. Shaw filed the Chapter 7 petition for the Quartet and noted on the petition that the board of directors would ratify the filing within ten days.

On December 26, 2001, the board of directors for the Quartet convened a special meeting to ratify the Chapter 7 filing. The minutes of the meeting indicate that Richard Burian, Doris Lederer, Shaw, and Ehrlich were physically present and that Timothy Carter, Stewart Rawnsley, and Akemi Takayama Wiencko were purportedly present by proxy. The board voted to ratify the bankruptcy filing by a vote of six to one. Ehrlich was alone in his opposition. *See* Debtor's Mem. in Opp'n to Ehrlich's Mot. to Dismiss, Ex. 2, Minutes of Special Meeting of Board of Directors of the Audubon Quartet, Inc., December 26, 2001.

On January 22, 2002, Ehrlich filed a motion to dismiss the petition of the Quartet. In the motion to dismiss, Ehrlich argues that the purported ratification was ineffective since neither Pennsylvania law nor the Quartet's by-laws authorized or recognized proxy voting by directors. In a written order entered on April 3, 2002, the court held that the Quartet's use of proxy voting at the special meeting was ineffective and that the Quartet had twenty-five days to provide proof of proper ratification; otherwise, the Quartet's case would be dismissed.

On April 29, 2002, the Quartet filed a report of the results of the second special meeting to ratify the bankruptcy filing. The report states that on April 25, 2002, the Quartet's directors met to ratify the bankruptcy filing. Counsel for the Quartet proffered and the minutes from the second special meeting corroborate that Ehrlich attended the meeting, objected to the notice, and voted against the ratifica-

tion. Once again, however, Ehrlich's position did not carry the day and, by a vote of six to one, the board ratified the filing.

On May 2, 2002, Ehrlich filed a supplemental pleading to his previously filed motion to dismiss. In this supplement he argues that the ratification on April 25, 2002 was ineffective. This time, Ehrlich takes issue with the notice of the special meeting. According to Ehrlich, Shaw signed the notice "as President of Audubon." Ehrlich's Supplemental Pleading to Motion to Dismiss at ¶ 2. Ehrlich argues that Shaw is not the president of the Quartet. Ehrlich asserts that according to the records of the Virginia State Corporation Commission, Lederer is the vice-president of the Quartet and Shaw is the secretary. Since Shaw was not an officer authorized to send notice of a special meeting, Ehrlich argues that the notice was improper and the board's ratification on April 25, 2002 was, therefore, null and ineffective.

The Quartet's articles of incorporation govern both special meetings and the powers and duties of the Quartet's directors and officers. Article Four, entitled "Meetings," states

Special meetings of this organization may be called by the President when he deems it for the best interest of the organization. Notices of such meeting shall be mailed to all members at their address as they appear in the membership roll book at least seven but not more than six days before the scheduled date set for such special meeting.

Article Eight, entitled "Officers," provides that the organization will have four officers: a president, a vice president, a secretary, and a treasurer. According to a joint meeting of members and directors held on October 21, 1988, the corporate by-laws were amended to provide "that the four officers of the Corporation shall be elected for one-year terms by the Board of

Directors at their regular, annual meeting." Debtor's Mem. in Opp'n to Ehrlich's Mot. to Dismiss, Ex. 1, Joint meeting of Members and Directors at 12. This article was also amended to provide that if a member of the organization should resign or cease to play for the quartet, then he or she shall immediately cease being a Director as well. *See id.*, Ex. 1, Joint Meeting of Members and Directors at 12.

Article Eight also discusses the powers and duties of the Quartet's officers. In pertinent part it states that the president is authorized to "preside at all membership meetings" and to be "a member of the Board of Directors." The president is also required to "see that all books, reports and certificates as required by law are properly kept or filed." Article Eight further provides that the vice president shall become the acting president in "the absence or inability of the president to exercise his office."

The issue before the court, therefore, is whether Ehrlich, a former officer and director of a corporation with a long history of informal operations, may mount an attack on the board's actions at a special meeting since the notice for that special meeting was not sent by a duly elected officer of the corporation. For the reasons that follow, the court answers in the negative and holds that the ratification was valid.

## II. DISCUSSION

■ The decision to initiate a bankruptcy case by a corporate entity must be made by those who have the power of management. *See Price v. Gurney*, 324 U.S. 100, 104, 65 S.Ct. 513, 89 L.Ed. 776 (1945). Management power is governed by state law. *See id.; In re Milestone Educ. Inst., Inc.*, 167 B.R. 716, 720 (Bankr.

D.Mass.1994) (stating "authority to file a bankruptcy depends upon the corporate documents and state law"). According to Pennsylvania law the power and right to manage the corporation is vested in the board of directors. 15 Pa. Cons.St. § 5721. This principle is likewise reflected in the by-laws of the Quartet.

■ Filing a corporation's bankruptcy petition is an act that requires board approval. *See* 15 Pa. Cons.St. § 5903 ("Whenever a business corporation is insolvent or in financial difficulty, the board of directors may, by resolution and without the consent of the members, authorize and designate the officers of the corporation to execute a deed of assignment for the benefit of creditors, or file a voluntary petition in bankruptcy ...."); Bankr.W.D.Va. Local R. 1074–1 & 5005–1 (requiring that a corporate debtor file with the court a copy the written authorization or the corporate resolution authorizing the filing of a bankruptcy petition). *See also In re Giggles Restaurant, Inc.*, 103 B.R. 549, 553 (Bankr.D.N.J.1989) (recognizing as a general proposition that power to file bankruptcy rests with the board).

Section 5727(a) of the Pennsylvania Nonprofit Corporation Law states the general rule that "[u]nless otherwise provided in the bylaws, a majority of the directors in office shall be necessary to constitute a quorum for the transaction of business and the acts of a majority of the directors present at a meeting at which a quorum is present shall be the acts of the board of directors." The by-laws of the Quartet state that the board shall consist of eleven directors and that six directors shall constitute a quorum. It does not appear that Pennsylvania has enacted legislation regarding the entities that may send notice of the meeting at which the board of di-

rectors acts.[3]

■ Generally, if a board's resolution or ratification is invalid, the petition must fail. *See Price,* 324 U.S. at 106, 65 S.Ct. 513; *In re Stavola/Manson Electric Co.,* 94 B.R. 21 (Bankr.D.Conn.1988) (dismissing corporation's bankruptcy petition as improperly filed by the president); *In re Autumn Press,* 20 B.R. 60, 62 (Bankr.D.Mass.1982) (dismissing a corporation's bankruptcy petition because a quorum of directors was not present at the meeting where the resolution to file bankruptcy was adopted). However, if the board later ratifies previously unauthorized acts, those acts will be duly adopted by the corporation and relate back to the date of the original transaction. *See McCay v. Luzerne and Carbon County Motor Transit Co.,* 125 Pa.Super. 217, 223, 189 A. 772, 774 (1937); *Hager v. Gibson,* 108 F.3d 35 (4th Cir.1997).

Ehrlich contends that the notice sent by Shaw was ineffective since he was not the president of the Quartet. Ehrlich relies on filings with the Virginia State Corporation Commission that list Shaw as the secretary to support his argument. Ehrlich's position is without merit.

As an initial matter, the listing of officers with a state commission is not dispositive as to the validity of the officer's status. The mere listing of officers with an agency does not validate an officers position if the election or appointment was not properly made in the first place. The court will not, therefore, rely on the listing with the Virginia State Corporation Commission to determine Shaw's official capacity.

Counsel for the Quartet attempted to ascertain the identity of the last president properly elected by the board. This endeavor is unnecessary and unhelpful as well. The Quartet's by-laws limit an offi-

cer to a one-year term. *See* Debtor's Mem. in Opp'n to Ehrlich's Mot. to Dismiss, Ex. 1, Joint Meeting of Members and Directors of Audubon Quartet, Inc. at 12, October 21, 1988. It would not matter if the board officially elected or appointed an officer in 1988 or if Shaw was recognized as the president sometime before April 2001, for example, since any officer's term would have expired one year later. There is no evidence that an officer was duly elected by the board within a year of April 2002; nor is there any evidence that officers routinely served for terms longer than a year. Thus, the court finds that for the times pertinent to this bankruptcy case, there were and are not any validly elected officers of the Quartet. At most, the officers of the Quartet informally assume their positions and are permitted to exist and to act for the Quartet due to the apparent acquiescence of the board of directors and members.

Competing against the formal requirement that the Quartet's bankruptcy petition be properly authorized by the board of directors is the clear substance of this case, supported by equitable considerations and uncontested facts. Specifically, Ehrlich should not be permitted to demand strict compliance since he co-founded the custom of disregard, the purpose of the notice requirement was not harmed, and Ehrlich waived objections to the notice by voting. The court finds these latter considerations persuasive.

■ First, there is no dispute that the Quartet's by-laws require the president or vice president to send the notice of special meetings. Furthermore, it is not debated that Pennsylvania law requires the board to follow corporate formalities in order to act for the corporation. However, the

---

**3.** Pa. Cons.Stat. § 5702, entitled "Manner of giving notice" discusses only the act of giving notice but does not specify who may give the notice.

court is unwilling to allow a party to interpose objections to the Quartet's disregard of technical formalities when that party was a participant to and was even at times partly responsible for the establishment of a custom of ignoring formal requirements. *See McCay v. Luzerne & Carbon County Motor Transit Co.*, 125 Pa.Super. 217, 222, 189 A. 772, 774 (1937) ("[T]he rules with reference to special meetings, the validity of the business transacted, and the necessity of notice like many other rules respecting modes of corporate action may be overcome by proof of contrary custom or usage on the part of the directors."); *In re Eastern Bancorporation*, 23 B.R. 474, 479 (Bankr.E.D.Pa.1982) ("Against this history of disregard for corporate formality, the former officers ask that we 'uphold the Pennsylvania Business Corporation Law and Eastern's (the debtor's) by-laws.' We will, of course, uphold the PBCL, but we cannot, in light of the present record, give force and effect to the debtor's 'by-laws.' ").

The court heard argument by the Quartet's counsel that corporate formalities were abysmally neglected. Counsel for the Quartet proffered that the officers of the corporation generally assumed their respective positions according to an annual revolving process. Each year the musicians would alternate among the various positions so that each musician would have the opportunity to serve in each official capacity. This process of filling the officer positions violated the terms of the by-laws, which requires yearly elections by the board of directors.

No one disputes that Ehrlich was both a director and officer of the corporation.[4] Counsel for the Quartet also proffered, without opposition, that Ehrlich, at one time, served as the president. As such he would have been intimately involved with the process of electing officers within the Quartet.

Illustrative of the long history of disregarding formalities are Shaw's comments noted on the minutes from the January 2000 meeting wherein he expressed his disdain for the long standing informal manner in which the board operated. Those same minutes show that Ehrlich also described the board's operations as "a joke." Since Ehrlich was, at times, vested with authority to ensure that corporate formalities were followed, and since he is, at least, partially to blame for the Quartet's utter disregard of formalities, it would not be proper or equitable to allow Ehrlich to now cry foul. The uncontroverted facts show that the Quartet has a long history of informal operations and the court will not heed Ehrlich's invitation to demand strict compliance at this time.

Second, the court does not believe that nullifying the board's ratification on April 25, 2002, for lack of proper notice is necessary to ensure the fulfillment of the pur-

---

4. The court questions whether Ehrlich has standing to object to the notice of the special meeting. As mentioned above, Article Eight of the Quartet's by-laws states that if a member ceases to play for the Quartet, he or she ceases also to be a director of the Quartet. Ehrlich obtained a judgment in Pennsylvania based on what the trial court described as "the summary ouster of Ehrlich as first violinist of the Quartet." *Ehrlich v. Audubon Quartet, Inc.*, No. GD 00–9438 (Pa.Ct.Com.Pl. Oct. 12, 2001) (Opinion and Adjudication). In fact, the state court concluded that Ehrlich was "squeezed out," but the court refused to order his reinstatement. *Id.* at 19. If the basis for Ehrlich's recovery in state court was predicated on a finding that he was improperly ousted from the Quartet, there is an undeniably strong inference that he no longer plays for the Quartet; thus, his status of a director was likewise terminated. It is not clear, therefore, that he has standing to object to the notice of the special meeting. However, since the court bases its decision on alternate grounds, it does not need to decide this issue.

pose for which the notice of special meetings is designed. In *Stone v. American Lacquer Solvents Co.,* 463 Pa. 417, 424, 345 A.2d 174, 178 (1975), the Supreme Court of Pennsylvania described the purpose behind the notice requirement for special meetings.

> Th[e] rationale is that each member of a corporate body has the right of consultation with the others, and has the right to be heard upon all questions considered, and it is presumed that if the absent members had been present they might have dissented, and their arguments might have convinced the majority of the unwisdom of their proposed action and thus have produced a different result.

*Id.* at 424, 345 A.2d at 178 (citing *Holcombe v. Trenton White City Co.,* 80 N.J.Eq. 122, 82 A. 618 (1912), *aff'd,* without opinion, 82 N.J.Eq. 364, 91 A. 1069 (1913)) (quotation marks omitted).

Here, Ehrlich did, in fact, receive notice of the meeting and did attend the meeting. Despite his numerous objections, the board voted in favor of ratification. Ehrlich was the lone voice of dissent. He cannot seriously claim that his ability to dissent and voice his opinion was stymied by improper notice. Moreover, the court does not believe that a different outcome would have resulted if the notice had been sent by Lederer or some other person. Twice now the board has spoken clearly in favor of ratification. Given the facts here, there is no utility in elevating form over substance.

■ Third, and finally, by participating in the meeting after noting his objection, Ehrlich waived his objections to the defective notice. Pennsylvania law states that "[a]ttendance of a person at any meeting shall constitute a waiver of notice of the meeting except where a person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting was not lawfully called or convened." 15 Pa. Cons.Stat. § 5705(b). *See Baldwin v. Rose Tree Fox Hunting Club,* 304 A.2d 505, 508, 451 Pa. 538, 543 (1973) (stating "the notice provision in the bylaws was waived by attendance at the special meeting" and recognizing that no objection was interposed).

Section 5705(b) is patterned after 15 Pa. Cons.Stat. § 1705. *See* 15 Pa. Const. Stat. § 5705 Historical and Statutory Notes 1995. Section 1705, which states the same waiver principle announced in § 5705, is patterned after Delaware General Corporation Law § 229. *See* 15 Pa. Const. Stat. § 1705 historical and Statutory Notes 1995. Section 229 of the Delaware General Corporation Law similarly states "[w]henever notice is required to be given under any provision of this chapter or the certificate of incorporation or bylaws ... [a]ttendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened." This provision has likewise been "applied to waive any defect with respect to notice when a director attends and participates in a meeting despite imperfect notice." *See, e.g., Adlerstein v. Wertheimer,* 2002 WL 205684, *1 (Del.Ch. 2002) (citing *Koch v. Stearn,* 1992 Del. Ch. LEXIS 163, at *12 (Del. Ch.1993)).

Various provisions in the Model Business Corporation Acts also state that

> [a] director's attendance at or participation in a meeting waives any required notice to him of the meeting unless the director at the beginning (or promptly upon his arrival) objects to holding the meeting or transacting business at the

meeting and does not thereafter vote for or assent to action taken at the meeting. Model Business Corporation Act § 8.23; Revised Model Business Corporation Act § 8.23; Revised Model Nonprofit Corporation Act § 8.23. *See* 1 Fletcher, Cyclopedia of the Law of Private Corporations, §§ 2.25, 2.75.10, & 411 (discussing waiver principles announced in Model Acts).

The court has not found a reported Pennsylvania court addressing the exact issue here, but believes that courts in Pennsylvania would interpret 15 Pa. Cons. Stat. § 5705(b) in a similar manner as Delaware courts and in line with the principles declared in the Model Acts that a director waives his objection to defects in the notice if after objecting to the notice the director participates in the meeting, i.e., votes. *See, e.g.,* 4 Fletcher, Cyclopedia of the Law of Private Corporations § 1820 (stating "one who as a director participates in a meeting of the directors at which a certain notice is directed to be given waives the objection that such notice is not in compliance with the statute."). That is precisely what Ehrlich did here; thus, his objections to the notice are not well-founded.

### CONCLUSION

In order to act for the corporation, the board of directors must comply with local laws and the documents of the corporation; however, when a party complaining of technical defects was once privy to and partly responsible for the defects, that party is estopped to later complain about the disregard of formalities. Also, the validity of the actions taken by a board at an improperly noticed meeting should not be quickly nullified if the defective notice did not hinder a director's ability to advocate his position. In other words, if the purpose for which the notice requirement was designed to serve is not harmed, there is

no perceivable benefit to demand strict compliance. Lastly, a director objecting to notice waives his objection if the director later participates in the meeting by voting. In sum, the court does not believe it is proper or equitable to enhance the value of formalities over substance in this case. *See Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966) (discussing equitable considerations); *GMAC v. Smith,* 377 F.2d 271, 274 (4th Cir.1967) ("In a bankruptcy proceeding it is especially appropriate to consider equitable principles and to disregard technicalities.").

Accordingly, it is

### ORDERED

That Ehrlich's Motion to Dismiss the Petition of Audubon Quartet, Inc. is DENIED and DISMISSED. Is it

### FURTHER ORDERED

That the ratification arising out of the April 25, 2002 special meeting of the board of directors of the Audubon Quartet, Inc., is valid to authorize the bankruptcy filing for the Audubon Quartet, Inc.

Copies of this order are directed to be sent to Howard J. Beck, Jr., Esq. and Lori D. Thompson, Esq., Gentry, Locke, Rakes, and Moore, Counsel for Audubon Quartet, Inc., P.O. Box 40013, Roanoke, Virginia 24022–0013; Richard C. Maxwell, Esq., Woods, Rogers & Hazlegrove, P.L.C., Counsel for David Ehrlich, P.O. Box 14125, Roanoke, Virginia 24038–4125; and to Roy Creasy, Trustee, 213 S. Jefferson Street, Suite 915, Roanoke, Virginia 24011–1735.